# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-1460

_____

Michael R. Nack, Individually and on behalf of all others similarly situated

*Plaintiff - Appellant*

v.

Douglas Paul Walburg

*Defendant - Appellee*

------------------------------

Anda, Inc.

*Amicus on Behalf of Appellee*

Crown Kosher Meat Market, Inc.; Menachem Raitport, Inc.;
Federal Communications Commission

*Amici on Behalf of Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 19, 2012
Filed: May 21, 2013 (Corrected May 21, 2013)

_____

Before WOLLMAN, MELLOY, and COLLOTON, Circuit Judges.

MELLOY, Circuit Judge.

Plaintiff Michael Nack appeals the district court's grant of summary judgment in this case arising under the Telephone Consumer Protection Act of 1991("TCPA"), Pub. L. No. 102-243, 105 Stat. 2394, as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), Pub. L. No. 109-21, 119 Stat. 359. Nack bases his claims upon the receipt of one fax advertisement from Defendant Douglas Walburg, which Nack's agent undisputedly consented to receive. The one fax Nack received did not contain opt-out language that he argues was mandated by federal regulation. 47 C.F.R. § 64.1200(a)(3)(iv). He asserts class-action claims on behalf of persons similarly situated and does not base claims upon any party's receipt of an *unsolicited* fax advertisement. The parties offered competing interpretations of the regulation, and the district court held the regulation did not apply in the current circumstances.

After one round of oral arguments that focused upon regulatory interpretation, our court solicited the input of the Federal Communications Commission ("FCC"). The FCC responded with an amicus brief explaining its interpretation of its own regulation. According to the FCC, the contested opt-out language is required, even on faxes sent after obtaining a potential recipient's consent. Although this interpretation is consistent with the plain language of the regulation, it is questionable whether the regulation at issue (thus interpreted) properly could have been promulgated under the statutory section that authorizes a private cause of action.

Nevertheless, based upon the FCC's interpretation, and for the reasons discussed below, we must reverse the grant of summary judgment. The Administrative Orders Review Act ("Hobbs Act"), 28 U.S.C. § 2342 *et seq*., precludes us from entertaining challenges to the regulation other than on appeals arising from agency proceedings (except arguably in extenuating circumstances not at issue in this case). Without addressing such challenges, we may not reject the

FCC's plain-language interpretation of its own unambiguous regulation. Our reversal today, therefore, places the parties back before the district court where Walburg faces a class-action complaint seeking millions of dollars even though there is no allegation that he sent a fax to any recipient without the recipient's prior express consent.

I.     Background

After consenting to receive and then receiving the fax advertisement at issue in this case, Nack filed the present complaint against Walburg. According to Nack's complaint, the key statutory and regulatory provisions at issue are 47 U.S.C. § 227(b)(3) and 47 C.F.R. § 64.1200(a)(3)(iv). No party argues additional facts bear upon the case at this stage of the proceedings. Accordingly, we describe the statutory and regulatory provisions at issue, describe the procedural history of the present case, and move directly to our discussion of the merits.

The TCPA, as amended by the JFPA, defines the term "unsolicited advertisement" to mean "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5) (2006).[1] In relevant part, the statute prohibits the "use [of] any . . . device to send, to a telephone facsimile machine, an unsolicited advertisement, unless . . . the unsolicited advertisement contains a notice meeting the requirements under paragraph 2(D)." Id. § 227(b)(1)(C) & (C)(iii). The notice must be conspicuous, provide a domestic telephone number, and identify a cost-free mechanism for the recipient to opt-out of receiving future "unsolicited advertisements." Id. §

---

[1]Neither the statute nor the regulation use or define the term "solicited" fax advertisements, but we employ it in this opinion to refer to a fax sent after obtaining the recipient's consent. We also refer to such faxes as permissive or consented-to faxes.

227(b)(2)(D)(I), (iv)(I)–(II).  The sender must also make the opt-out mechanism available "any time on any day of the week."  Id. § 227(b)(2)(D)(v).  Finally, the

TCPA as amended by the JFPA creates a private cause of action based upon § 227(b) or upon regulations promulgated under § 227(b), as follows:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–
>
>> (A) an action *based on a violation of this subsection or the regulations prescribed under this subsection* to enjoin such violation,
>>
>> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>>
>> (C) both such actions.
>
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3) (emphasis added).

The statute itself does not expressly impose similar limitations or requirements on the sending of solicited or consented-to fax advertisements.  The most pertinent regulation in this case, however, read most naturally and according to its plain language, extends the opt-out notice requirement to solicited as well as unsolicited fax advertisements:

-4-

A facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies with the requirements in paragraph (a)(3)(iii) of this section.

47 C.F.R. § 64.1200(a)(3)(iv).

In the district court, the parties framed their arguments in terms of regulatory interpretation. Based upon the limited reach of the actual statute, the district court doubted that the above-quoted language from 47 C.F.R. § 64.1200(a)(3)(iv) should be interpreted to apply to faxes other than unsolicited faxes. Looking at other regulatory provisions, headers, titles, and the general organizational structure of the regulation (including the placement of section 64.1200(a)(3)(iv) within a section dealing generally with unsolicited facsimiles), the district court held that the regulation applied only to unsolicited faxes and did not apply in the present case.

In reaching this conclusion, the district court reviewed commentary including an FCC order from 2006 discussing the regulation of permissive or solicited fax advertisements under the JFPA. In that commentary, the FCC described the purpose of the regulation at issue in a manner largely consistent with the plain language of the regulation, stating:

In addition, entities that send facsimile advertisements to consumers from whom they obtained permission, must include on the advertisement their opt-out notice and contact information to allow consumers to stop unwanted faxes in the future.

In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Junk Fax Prevention Act of 2005, 21 FCC Rcd 3787, 3812 (2006) ("2006 Order"). As noted by the district court, however, the FCC also set forth a confusing and

inconsistent assertion in the 2006 Order. In direct contradiction to the plain language of the regulation and the passage quoted above, the FCC stated, "the opt-out notice requirement only applies to communications that constitute unsolicited advertisements." 2006 Order at 3808 n.154.

After an initial round of briefing and arguments, we solicited the views of the FCC as an amicus. In its brief, the FCC confirmed its plain-language interpretation of its regulation. The FCC explained that the regulation reached faxes for which the recipient had granted consent because consent, once granted, need not be interpreted as permanent. The FCC sought to ensure that even recipients who consented to receive a fax could easily and without expense stop the sending of any possible future faxes. The FCC acknowledged, but did not attempt to explain, the inconsistent passage from the 2006 Order.

Through supplemental briefing in response to the FCC's brief, and through a second round of arguments, Walburg's position evolved to reflect the shifting landscape around him. Although he initially argued primarily that the regulation could not be interpreted as applying to "solicited" faxes, he now focuses his argument upon the validity of the regulation and the scope of the private right of action. He argues that the regulation could not have been properly promulgated pursuant to the authorizing statute because the statute itself does not reach solicited fax advertisements. He also argues that, even if the FCC otherwise possessed the authority to promulgate the regulation at issue, the FCC's statutory authority for the regulation of solicited fax advertisements could not come from the particular statutory section that authorizes the private cause of action. Further, he argues for the first time on appeal that the regulation, as interpreted by the FCC, is an unconstitutional abridgement of the First Amendment.

Finally, we have received amicus briefing from another party involved in different private litigation under the TCPA. That party, Anda, Inc., has pursued

administrative resolution of some of the questions presently before our court. Specifically, Anda petitioned for a declaratory ruling from the FCC concerning the statutory source of authority for the regulation governing solicited faxes and the scope of the private right of action. The FCC dismissed Anda's administrative petition on procedural grounds, holding that Anda's "[p]etition identifies no controversy to terminate or uncertainty to remove, a condition precedent to the Commission issuing a declaratory ruling." In the Matter of Junk Fax Prevention Act of 2005, 27 FCC Rcd. 4912, 4912 (May 2, 2012) (Order by the Acting Chief, Consumer & Governmental Affairs Bureau).

## II.    Discussion

### A.    Regulatory Interpretation

When an agency is specifically charged with enforcing a statute and promulgating regulations to implement that statute, we "defer to [the] agency's interpretations . . . unless we find that a 'regulation is contrary to unambiguous statutory language, that the agency's interpretation of its own regulation is plainly erroneous or inconsistent with the regulation, or that application of the regulation [is] arbitrary or capricious.'" United States v. J & K Market Centerville, LLC, 679 F.3d 709, 712 (8th Cir. 2012) (quoting Ballanger v. Johanns, 495 F.3d 866, 872 (8th Cir. 2007)). We generally extend this deference to the agency even if the agency's interpretation of its own regulation is expressed merely in a brief to the court rather than through some other means. See Talk Am., Inc. v. Mich. Bell Tel. Co., 131 S. Ct. 2254, 2261 (2011) ("[W]e defer to an agency's interpretation of its regulations, even in a legal brief, unless the interpretation is 'plainly erroneous or inconsistent with the regulation[s]' or there is any other 'reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.'" (quoting Chase Bank USA, N.A. v. McCoy, 131 S. Ct. 871, 880, 881 (2011))).

Setting aside any concerns regarding the validity of 47 C.F.R. § 64.1200(a)(3)(iv) or the scope of the private right of action, we believe that the regulation as written requires the senders of fax advertisements to employ the above-described opt-out language even if the sender received prior express permission to send the fax. This plain-language interpretation of the regulation is consistent with the FCC's proffered interpretation of its own regulation and is largely consistent with the 2006 Order (other than the confusing passage identified by the district court). In this circumstance, we must defer to the FCC's plain-language interpretation of its own regulation unless the regulation is "contrary to unambiguous statutory language" or "application of the regulation [is] arbitrary or capricious." Ballanger, 495 F.3d at 872.

Given the procedural posture of the present case, these two exceptions provide no basis for our court to reject the FCC's proffered interpretation. An argument that this unambiguous regulation is "contrary to unambiguous statutory language," id., is, in our view, a direct challenge to the validity of the regulation. Similarly, because Nack seeks application of the regulation in a manner consistent with the regulation's plain language, any challenge asserting that "application of the regulation [is] arbitrary or capricious," id., appears to be a challenge to the validity of the regulation itself. As explained below, the Hobbs Act precludes us from entertaining such challenges at the present stage. As such, we must interpret the regulation in a manner consistent with its plain language and the FCC's interpretation.

B.    Challenges to the Regulation

The Hobbs Act provides that the courts of appeals have exclusive jurisdiction to determine the validity of FCC orders. 28 U.S.C. § 2342 (2006) ("The court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of (1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47[.]"); 47

U.S.C. § 402(a) (2006) ("Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 158 of Title 28."). A party challenging an FCC regulation as *ultra vires* must first petition the agency itself and, if denied, appeal the agency's disposition directly to the Court of Appeals as provided by the statute. FCC v. ITT World Commc'ns, Inc., 466 U.S. 463, 468 (1984). "[T]he procedural path designed by Congress serves a number of valid goals: It promotes judicial efficiency, vests an appellate panel rather than a single district judge with the power of agency review, and allows 'uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress' to enforce the TCPA." CE Design, Ltd. v. Prism Bus. Media, Inc., 606 F.3d 443, 450 (7th Cir. 2010) (quoting N.Y. Co. v. N.Y Dep't of Labor, 440 U.S. 519, 528 (1979) (plurality opinion)).

Here, there was no administrative proceeding because the plaintiff filed a private action. In response, the defendant pursued summary judgment and has not yet elected to seek a stay of litigation to pursue administrative remedies through the FCC. However, "[w]here the practical effect of a successful attack on the enforcement of an order involves a determination of its validity," such as a defense that a private enforcement action is based upon an invalid agency order, "the statutory procedure for review provided by Congress remains applicable." Sw. Bell Tel. v. Ark. Pub. Serv. Comm'n, 738 F.2d 901, 906 (8th Cir. 1984), vacated and remanded on other grounds, 476 U.S. 1167 (1986). To hold otherwise merely because the issue has arisen in private litigation would permit an end-run around the administrative review mandated by the Hobbs Act. Such an end run could result in a judicial determination of a regulation's invalidity without participation by the agency and upon a record not developed by the agency.

The Seventh Circuit has confronted this issue and agrees that it "makes no difference" if the question of validity arises in a suit between two private parties

because "the Hobbs Act's jurisdictional limitations are 'equally applicable whether [a litigant] wants to challenge the rule directly . . . or indirectly.'" CE Design, 606 F.3d at 448 (quoting City of Peoria v. Gen. Elec. Cablevision Corp (GECCO), 690 F.2d 116, 120 (7th Cir. 1982)). Finally, although not in the context of a private action, we have held clearly that "[a] defensive attack on the FCC regulations is as much an evasion of the exclusive jurisdiction of the Court of Appeals as is a preemptive strike by seeking an injunction." United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 463 (8th Cir. 2000). We hold, therefore, that the Hobbs Act generally precludes our court from holding the contested regulation invalid outside the statutory procedure mandated by Congress.[2]

C. Scope of the Private Right of Action

The private right of action authorized by 47 U.S.C. § 227(b)(3) extends to violations of § 227 and also to "the regulations prescribed under" § 227(b). Walburg argues correctly that if the agency's promulgation of the regulation was *ultra vires* or was pursuant *exclusively* to some statutory authority other than § 227(b), the private right of action could not reach violations of the regulation. See, e.g., Global Crossing Telecomm., Inc. v. Metrophones Telecomm., Inc., 550 U.S. 45, 47–48 (2007) (holding that Congress rather than the FCC creates the private right of action, but in linking that right of action to a regulation, Congress created a right that extends to lawfully enacted regulations as well); Alexander v. Sandoval, 532 U.S. 275, 290–93

---

[2]Walburg has not attempted to challenge the validity of 47 C.F.R. § 64.1200(a)(3)(iv) either through a petition for reconsideration under 47 U.S.C. § 405(a), *cf.* Tri-State Motor Transit Co. v. ICC, 739 F.2d 1373, 1375 n.2 (8th Cir. 1984), or a petition for rulemaking to repeal the rule pursuant to 47 C.F.R. § 1.401. We therefore need not consider at this juncture whether a refusal of the agency to consider a substantive challenge to the regulation would allow this court to exercise jurisdiction over such a challenge. *Cf.* Any & All Radio Station Transmission Equip., 207 F.3d at 463 (suggesting that a court of appeals "might" have jurisdiction under those circumstances).

(2001) (holding that the scope of a private right of action is limited to the scope set forth in the statutory language creating the private right of action and that no private right exists to enforce regulations promulgated under a different statutory section for which Congress did not create such a right). We hold that, on the facts of the present case, these arguments are, in effect, impermissible challenges to the regulation.

For reasons that require no further elaboration, it is clear that the *ultra vires* argument is wholly indistinguishable from a direct challenge. A challenge that concedes the regulation's validity but asserts that the regulation was not promulgated pursuant to § 227(b) is distinct. Such a challenge, however, involves the same need for deference to the agency and nationally uniform determinations as a direct, Hobbs Act challenge. The rationale for the regulation, as set forth in the 2006 Order and as discussed in the FCC's amicus brief, arguably brings the regulation within range of what § 227(b) authorized the FCC to regulate. We do not believe that, in this circumstance, it is possible or prudent for our court to resolve this issue without the benefit of full participation by the agency. See, e.g., Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743 (1985) ("In the absence of specific evidence of contrary congressional intent, however, . . . review of orders resolving issues preliminary or ancillary to the core issue in a proceeding should be reviewed in the same forum as the final order resolving the core issue.").

D.    Constitutional Challenge

Finally, Walburg argues that, if the regulation must be interpreted as urged by the FCC, then it is unconstitutional. We held in Missouri ex rel. Nixon v. Am. Blast Fax, Inc., 323 F.3d 649, 660 (2003), that the TCPA provisions regarding unsolicited fax advertisements were not an unconstitutional restriction upon commercial speech. Applying the commercial speech test of Central Hudson Gas & Electric Corporation v. Public Service Comm'n, 447 U.S. 557, 566 (1980), we concluded that, on balance, the TCPA's restrictions on commercial speech represented a sufficiently narrowly

-11-

tailored restriction in pursuit of a substantial governmental interest. <u>Am. Blast Fax</u>, 323 F.3d 655–60. Suffice it to say, the analysis and conclusion as set forth in <u>American Blast Fax</u> would not necessarily be the same if applied to the agency's extension of authority over solicited advertisements. Nevertheless, this issue was not raised below and, as such, is not properly before us at this time.

III. Conclusion

We reverse the judgment of the district court and remand for further proceedings. On remand, the district court may entertain any requests to stay proceedings for pursuit of administrative determination of the issues raised herein.

_____