2016 OK CIV APP 77

**KETCH, INC., an Oklahoma Corporation on Behalf of Itself and All Others Similarly Situated, Plaintiff/Appellee,**

v.

**ROYAL WINDOWS, INC., a Texas Corporation, Defendant/Appellant.**

**Case Number: 113986**

Court of Civil Appeals of Oklahoma, Division No. 4.

Decided: 11/08/2016

Mandate Issued: 12/14/2016

Matthew J.G. McDevitt, Shawn E. Arnold, LYTLE, SOULE & CURLEE, Oklahoma City, Oklahoma, for Plaintiff/Appellee

Jeffrey J. Box, JEFFREY J. BOX, P.C., Oklahoma City, Oklahoma, for Defendant/Appellant

JERRY L. GOODMAN, CHIEF JUDGE:

¶ 1 Royal Windows, Inc. (Royal) appeals an October 4, 2013, order granting Ketch, Inc.'s, et al. (Ketch) motion for summary judgment on liability under the Telephone Communication Protection Act (TCPA), 47 U.S.C. 227 *et seq.*, as amended by the Junk Fax Protection Act (JFPA), as well as a May 1, 2015, order granting Ketch summary judgment and awarding damages in the amount of $290,000.00. The appeal was assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(a)(1), 12 O.S. 2011 and Supp. 2013, Ch. 15, App. 1 and In Re Amendments to Oklahoma Supreme Court Rules, 2013 OK 67, —— P.3d ——. Based upon our review of the record and applicable law, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2 Ketch was a customer of Royal from 2001. On March 20, 2008, Ketch requested a 2008 catalogue from Royal. On March 26, 2008, Royal sent Ketch a facsimile advertisement. The advertisement included Royal's contact information, address, and facsimile number. On July 17, 2008, Ketch filed a class action petition against Royal under the TCPA, 47 U.S.C. 227 *et seq.*, asserting the facsimile did not include required opt-out language, *i.e.*, if you had received the facsimile in error, please call to be removed. On December 18, 2009, the trial court granted Ketch's motion for class certification. Royal did not appeal this order.

¶ 3 On April 12, 2013, Ketch filed its first amended motion for summary judgment, asserting it was entitled to relief under the TCPA. Ketch asserted, *inter alia*, that all facsimile advertisements, whether solicited or unsolicited, must contain the opt-out language or liability attached. Ketch maintained Royal's facsimiles did not contain the required opt-out notice and were therefore in violation of the TCPA. Royal responded, dis-

puting Ketch's assertions. Although Royal acknowledged its facsimile advertisements did not contain any opt-out notice, it asserted the TCPA only requires the opt-out language for unsolicited facsimile advertisements.[1] After additional briefing and a hearing, the trial court, by order entered on October 4, 2013, granted Ketch's motion for summary judgment, finding "all faxes, including faxes sent where the advertiser and recipient have an established business relationship, must contain a notice allowing the recipient to 'opt-out' of receiving additional faxes."

¶ 4 Ketch subsequently filed a motion for summary judgment on damages, asserting Royal sent a facsimile to the 103 Class Members between three (3) and seven (7) times from August 1, 2006, to July 17, 2008, for total damages in the amount of $303,500.00. Ketch further requested treble damages, asserting Royal willfully and knowingly violated the TCPA. Royal disagreed, asserting material disputed factual questions existed regarding the number of TCPA violations allegedly committed and the entities that comprise the class. By order entered on May 1, 2015, the trial court granted Ketch's motion for summary judgment, finding 580 facsimile advertisement violations. The court awarded $290,000.00 in damages. The court denied Ketch's request for treble damages.

¶ 5 Royal appeals.

## STANDARD OF REVIEW

¶ 6 Summary judgment is properly granted "when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Davis v. Leitner*, 1989 OK 146, ¶ 9, 782 P.2d 924. In reviewing a grant of summary judgment, we must view all conclusions and inferences to be drawn from the evidentiary materials in a light most favorable to the party who opposes the motion. *Id.*

¶ 7 An appeal from an order granting summary judgment is subject to de novo review.

---

1. Royal also untimely asserted the trial court abused its discretion in granting class certifica- tion.

*Shull v. Reid,* 2011 OK 72, ¶ 3, 258 P.3d 521. De novo review involves a plenary, independent, and non-deferential examination of the trial court's decision. *In re Estate of Bell–Levine,* 2012 OK 112, ¶ 5, 293 P.3d 964, 966.

## ANALYSIS

### A. TCPA

■ ¶ 8 For its first assertion of error, Royal asserts a question of fact exists as to whether the facsimile advertisements sent to Ketch and other Class Members were solicited or unsolicited, precluding summary judgment. Royal contends only unsolicited facsimile advertisements are subject to the TCPA, *i.e.,* must contain opt-out language. Ketch disagrees, contending all facsimile advertisements must contain opt-out language.

¶ 9 The TCPA imposes restrictions on the use of automatic telephone dialing systems, artificial or prerecorded voice messages, and telephone facsimile machines to send unsolicited advertisements unless the unsolicited advertisement contains a notice meeting the requirements of the TCPA. 47 U.S.C. 227(b)(1).[2] Relevant to this opinion, an unsolicited advertisement is defined under the TCPA as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. 227(a)(5).

¶ 10 The TCPA was amended on July 9, 2005, by the JFPA. The JFPA permits facsimile advertisements to be sent when an advertiser has an established business relationship with the recipient. 47 U.S.C. 227(b)(1)(C).[3] However, the Act requires that an unsolicited advertisement to an established business relationship contain the required opt-out language. *Id.* at 227(b)(1)(C)(3) and (b)(2)(D)(i-vi). The opt-out notice must be clear and conspicuous, be located on the first page of the unsolicited advertisement, provide a 24–hour domestic telephone number, and identify a cost-free mechanism for the recipient to opt-out of receiving future unsolicited advertisements. *Id.* at 227(b)(2)(D)(i)-(iv).

¶ 11 Notably, the TCPA does not expressly require opt-out language on the sending of solicited or consented-to facsimile advertisements. However, the TCPA provides that the Federal Communications Commission (FCC) "shall proscribe regulations to implement the requirements" of the TCPA. *Id.* at 227(b)(2). The FCC specifically promulgated a regulation requiring all facsimile advertisements, whether solicited or unsolicited, to include an opt-out notice after August 1, 2006. *See* 47 C.F.R. 64.1200(a)(3)(iv) (2007) ("A facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice.").[4] In addition, the FCC has reiterated its position that the opt-out notice is required for all facsimile advertisements, even if there is an established business relationship or the sender has obtained prior consent. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005,* 71 Fed.Reg. 25967–01, 25972, 2006 WL 1151584 (2006) ("In addition, entities that send facsimile advertisements to consumers from whom they obtained permission must include on the advertisements their opt-out notice and contact information to allow consumers to stop unwanted faxes in the future.").

¶ 12 In the present case, the parties dispute whether the FCC regulation applies to both solicited and unsolicited facsimile advertisements. Oklahoma has not addressed this issue.

**2.** Amended by PL 114–74, November 2, 2015, 129 Stat 584.

**3.** An established business relationship is defined as: a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within three months immediately preceding the date of the call, which relationship has not been previously terminated by either party. 47 C.F.R. 64.1200(f)(4).

**4.** This provision was modified and reordered by the FCC, effective July 11, 2012. 77 F.R. 34233, 34246–34247.

¶ 13 In *Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013), a fax advertisement was sent to the plaintiff with the express consent of the plaintiff's agent but the fax lacked the opt-out notice mandated by the FCC. The trial court granted summary judgment to the defendant, finding the FCC's regulation requiring an opt-out notice applied only to unsolicited faxes. The Eighth Circuit reversed based on a submission by the FCC stating the opt-out requirement applies to all faxes. The court noted that when an agency was specifically charged with enforcing a statute and promulgating regulations to implement that statute, the court deferred to the agency's interpretations. *Id.* at 684. The court stated the proper procedure for challenging the regulation was through the FCC's administrative procedures, noting the Hobbs Act precluded it from entertaining such challenges. *Id.*

¶ 14 The court noted the Hobbs Act provides that the Courts of Appeals have exclusive jurisdiction to determine the validity of FCC orders. *Id.* at 685 (citing 28 U.S.C. 2342 (2006)) ("The court of appeals ... has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of (1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47[.]"); 47 U.S.C. 402(a) (2006) ("Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 158 of Title 28."). A party challenging an FCC regulation as *ultra vires* must first petition the agency itself and, if denied, appeal the agency's disposition directly to the Court of Appeals as provided by the statute. *Id.* at 685 (citing *FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984)). "[T]he procedural path designed by Congress serves a number of valid goals: It promotes judicial efficiency, vests an appellate panel rather than a single district judge with the power of agency review, and allows 'uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress to enforce the TCPA.'" *Id.* at 685 (citing *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 450

(7th Cir.2010)) (quoting *N.Y. Co. v. N.Y. Dep't of Labor*, 440 U.S. 519, 528, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979)).

¶ 15 Notably, a number of federal courts have stayed proceedings in the district court and have permitted a party to file to a petition with the FCC seeking a declaratory ruling whether the opt-out notice is required for both solicited and unsolicited facsimile advertisements. See, e.g., *St. Louis Heart Ctr., Inc. v. Gilead Palo Alto, Inc.*, No. 4:13–CV–958–JAR, 2013 WL 5436651, at *1–2 (E.D.Mo. Sept.27, 2013); *Raitport v. Harbour Capital Corp.*, 09–CV–156–SM, 2013 WL 4883765, at *1 (D.N.H. Sept. 12, 2013).

¶ 16 On October 30, 2014, the FCC issued an order clarifying its regulation. The order specifically provides that solicited faxes—those sent with a party's prior express permission—require an opt-out notice (Dkt. No. 36 at 5–29). Accordingly, this Court finds the FCC's regulation unequivocally requires all advertisements, solicited and unsolicited, to include an opt-out notice. Royal's assertion to the contrary is therefore denied.

¶ 17 In the present case, Royal does not dispute that its seven (7) facsimile advertisements do not contain an opt-out notice. Accordingly, Royal has violated the TCPA, as amended by the JFPA. The trial court's October 4, 2013, order granting Ketch summary judgment is therefore affirmed.

### B. Damages Under the TCPA, as amended by the JFPA

¶ 18 For its next assertion of error, Royal contends there are material disputed factual questions regarding the number of TCPA violations it allegedly committed as well as the entities that comprise the actual class.

¶ 19 The TCPA provides statutory damages under a private right of action in the amount of $500.00 for each violation. 47 U.S.C. 227(b)(3)(B). In addition, the statute further authorizes an award of up to three (3) times that amount if the facsimile was sent knowingly or willfully. *Id.*

¶ 20 Royal disputes that Ketch has established its damages, maintaining that material questions of fact exist. Royal asserts a question of fact exists as to when each facsimile advertisement was sent to a Class Member

and that Ketch has merely assumed specific dates that are not supported by evidentiary material. For example, Royal notes that one (1) advertisement has a date of "April 2008" and that Ketch merely assumes Royal sent the advertisement in "March of 2008" without providing any evidence to support this assumption. Royal maintains the exact date a facsimile was sent is necessary to determine if a particular Class Member was "active" on the date the facsimile was sent. Daniel Sean O'Neill, Royal's vice president of sales and marketing, testified a facsimile advertisement was normally sent to a business entity for only one (1) year following any account activity Royal had with the business entity. However, the business entity would be removed from the facsimile list if they moved, closed their business, went bankrupt, or did not purchase anything from Royal for a period of one (1) year, i.e., was no longer active. With respect to Ketch, O'Neill stated it was on the inactive list effective on May 26, 2006, and only became active upon its request for information on March 20, 2008. Thus, it would not have received any facsimile advertisements prior to March 20, 2008. Royal alleges periods of similar non-activity by other listed Class Members.[5] Thus, Royal contends questions of fact exist as to the number of alleged TCPA violations.

¶ 21 Ketch disagrees, contending Royal faxed unsolicited advertisements to 103 Class Members with whom Royal had an established business relationship between three (3) and seven (7) times from August of 2006 through July of 2008. Ketch asserts that each of the 103 Class Members had account activity with Royal and therefore received a facsimile advertisement. Thus, Ketch contends Royal violated the TCPA 607 times and requested statutory damages in the amount of $303,500.00. Ketch further asserts, however, that assuming a different date for the sending of the facsimile advertisements, as Royal

has alleged, Royal would still be responsible for sending 579 facsimile advertisements to Class Members during the relevant time period. The trial court ultimately awarded Ketch $290,000.00 in damages, finding a total of 580 violations.

¶ 22 A review of the record presented reveals questions of fact exist as to the number of TCPA violations. The record provides Royal sent seven (7) facsimile advertisements. The seven (7) advertisements provide as follows:

3rd Quarter Promotions August 1, 2006 through September 30, 2006

September 8, 2006

Look What's New for 2007

10% off 2″ Signature Wood 10/01/07 thru 12/31/07

2008 Promotions (includes a facsimile time stamp date of March 26, 2008)[6]

2008 Promotions

April 2008

¶ 23 For purposes of summary judgment, Ketch asserts that one (1) advertisement was faxed on August 1, 2006, one (1) on September 8, 2006, one (1) in December of 2006, one (1) in September of 2007, and three (3) in March of 2008. However, the advertisements, with at most two (2) exceptions, do not include a specific date or other information on when it was faxed to a specific Class Member. Ketch offers no factual support to demonstrate that a particular advertisement was sent on the date it identifies. Ketch's assumptions directly impact its damages, as such information is necessary to determine the number of TCPA violations. As Royal noted, a Class Member will only receive an advertisement if it was "active" on the date the facsimile was sent. A Class Member is deemed inactive if they moved, closed their business, went bankrupt, or did not purchase anything from Royal for a period of one (1) year.

---

**5.** For example, Ketch claims Class Member B&K Carpet Design received three (3) facsimile advertisements in "March of 2008" in violation of the TCPA. Royal notes, however, that B&K's only activity from 2006 to July 2008 was a request for a sample kit on March 18, 2008. Thus, it was inactive until March 18, 2008, and would not have received an advertisement until this time. Royal contends the actual date the facsimile was sent is therefore clearly relevant to determine if

B&K received the three (3) facsimile advertisements as alleged by Ketch. For example, Royal notes one (1) of the advertisements is a "2008 Promotions" and could have been sent at any time prior to March 18, 2008. Thus, the actual number of TCPA violations is disputed.

**6.** Royal contends this facsimile is the one faxed to Ketch on March 26, 2006.

¶ 24 For example, with respect to Class Members Esau Services Co. Inc., and Fabric Works, Ketch asserts three (3) TCPA violations occurred when three (3) advertisements were faxed in March of 2008. To establish these violations, Ketch asserts the two (2) "2008 Promotions" and the "April 2008" advertisements were faxed in March of 2008. However, as previously noted, the record only establishes that one (1) advertisement was sent on March 26, 2008. There is nothing in the record to substantiate Ketch's assertion that the other two (2) advertisements were faxed to Class Members sometime in March of 2008.

¶ 25 Furthermore, Esau Services and Fabric Works were inactive prior to March of 2008. Thus, if the advertisements were faxed prior to March of 2008, both Esau Services and Fabric Works would have been inactive and would not have received the advertisements, resulting in no violation of the TCPA. Similar results exist for other Class Members. Accordingly, the specific dates the advertisements were faxed to a Class Member are a material fact in dispute and are relevant to a determination of the number of Royal's violations of the TCPA.

 ¶ 26 Where, as in the summary judgment record before us, contradicted material facts are present, summary judgment is not appropriate. As stated by the Oklahoma Supreme Court in *Harmon v. Cradduck*, 2012 OK 80, 286 P.3d 643:

> Examination of an order sustaining summary judgment requires Oklahoma courts to determine whether the record reveals disputed material facts or whether reasonable minds could draw different conclusions from undisputed facts. All facts and inferences must be viewed in a light most favorable to the party opposing summary adjudication. If the essential fact issues are in dispute, or reasonable minds might reach different conclusions in light of the inferences drawn from undisputed facts, summary judgment should be denied.

*Id.* at ¶ 11, at 648 (citations omitted). Further, the trial "court should not weigh the evidentiary materials on a motion for summary judgment. It is not the purpose of summary judgment to substitute trial by affidavit for a trial according to law." *Malson v. Palmer Broad. Grp.*, 1997 OK 42, ¶ 11, 936 P.2d 940, 942 (citation omitted).

> [Summary judgment] is a method for identifying and isolating non-triable fact issues, not a device for defeating the opponent's right to trial. Only that evidentiary material which entirely eliminates from testing by trial some or all material fact issues will provide legitimate support for nisi prius use of summary relief in whole or in part. . . . The function of summary process is not to set the stage for trial by affidavit, but to afford a method of summarily terminating a case (or eliminating from trial some of its issues) when only questions of law remain.

*Shamblin v. Beasley*, 1998 OK 88, ¶ 9, 967 P.2d 1200 (footnotes omitted).

¶ 27 Accordingly, the evidentiary material offered by Ketch in support of its motion reveals material questions of fact as to the number of TCPA violations. Thus, we conclude summary judgment was erroneously granted on the issue of damages. The trial court's May 1, 2015, order granting Ketch damages in the amount of $290,000.00 is therefore reversed and the matter is remanded for further proceedings consistent with this opinion.

### CONCLUSION

¶ 28 The trial court's October 4, 2013, order granting Ketch summary judgment on the issue of liability is affirmed. The trial court's May 1, 2015, order granting Ketch damages in the amount of $290,000.00 is reversed and the matter is remanded for further proceedings consistent with this opinion.

¶ 29 **AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.**

WISEMAN, P.J., and FISCHER, J., concur.