THACKER, Circuit Judge, dissenting:
 

 Because I believe that (1) the district court did not exceed its jurisdiction under the Hobbs Act and (2) the 2006 FCC Rule requires a commercial aim, which is not present here, I respectfully dissent.
 

 I.
 

 Hobbs Act Jurisdiction
 

 Carlton & Harris ("Appellant") argues that the district court exceeded its jurisdiction under the Hobbs Act. Appellant asserts that the Hobbs Act precludes any
 
 Chevron
 
 analysis and requires district courts to simply defer to-or adopt-FCC guidance.
 
 See
 

 Chevron, U.S., Inc. v. Nat. Res. Def. Council
 
 ,
 
 467 U.S. 837
 
 , 842-44,
 
 104 S.Ct. 2778
 
 ,
 
 81 L.Ed.2d 694
 
 (1984). Therefore, Appellant contends, and the majority agrees, that by engaging in a
 
 Chevron
 
 analysis, the district court inappropriately determined the validity of the 2006 FCC Rule. I disagree. In my view, the district court did not actually determine the validity of the 2006 FCC Rule. Therefore, the district court did not exceed its jurisdiction.
 

 A.
 

 Under the Hobbs Act, the federal courts of appeals "ha[ve] exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of ... all final orders of the [FCC]."
 
 28 U.S.C. § 2342
 
 . Accordingly, Congress entrusts district courts with the singular task of interpreting and enforcing FCC guidance when required. The
 
 Chevron
 
 doctrine, which governs judicial review of an agency's construction of a statute, provides a two step tool guiding when a district court must interpret and enforce administrative authority. At step one of the
 
 Chevron
 
 analysis, the court determines whether the statute is ambiguous.
 
 See
 

 467 U.S. at 842-43
 
 ,
 
 104 S.Ct. 2778
 
 . If the statute is clear, "that is the end of the matter" and the
 court does not defer to the agency construction.
 

 Id.
 

 at 842
 
 ,
 
 104 S.Ct. 2778
 
 . If the statute is ambiguous, the court moves to step two.
 
 See
 

 id.
 

 at 843
 
 ,
 
 104 S.Ct. 2778
 
 . At step two, "the question for the court is whether the agency's answer is based on a permissible construction of the statute."
 

 Id.
 

 The majority concludes that when a court decides that a statute is unambiguous at step one of the
 
 Chevron
 
 analysis and accordingly does not defer to the agency's construction at issue, it necessarily invalidates the agency's construction. Therefore, the majority's reasoning goes, in order to avoid violating the Hobbs Act by deciding the validity of FCC orders, which is the sole purview of the courts of appeal, district courts must simply defer to FCC guidance and cannot engage in any
 
 Chevron
 
 analysis at all.
 
 See
 

 an
 

 te
 
 at ---- ("We conclude ... that the Hobbs Act ... precluded the district court from even reaching the step-one question [of
 
 Chevron
 
 ].").
 

 I take issue with the majority's conclusion that the failure of the district court to defer to an agency's construction at step one of the
 
 Chevron
 
 analysis invalidates the agency's construction. Invalidation occurs at step one of
 
 Chevron
 
 only if a court finds that that the agency's construction is in conflict with the unambiguous statutory language.
 
 See, e.g.
 
 ,
 
 William v. Gonzales
 
 ,
 
 499 F.3d 329
 
 , 333-34 (4th Cir. 2007) ("[W]e believe it is evident that [the regulation] ... conflicts with the [unambiguous] statute .... Therefore, we conclude that this regulation lacks authority and is invalid.");
 
 Foxglenn Inv'rs, Ltd. P'ship v. Cisneros
 
 ,
 
 35 F.3d 947
 
 , 952 (4th Cir. 1994) (declaring invalid a regulation that rendered a section of an unambiguous statute superfluous);
 
 see also
 

 Mais v. Gulf Coast Collection Bureau, Inc.
 
 ,
 
 768 F.3d 1110
 
 , 1119 (11th Cir. 2014) (recognizing that the district court invalidated an FCC regulation when it deemed it to be inconsistent with the clear meaning of the TCPA);
 
 Nack v. Walburg
 
 ,
 
 715 F.3d 680
 
 , 685-86 (8th Cir. 2013) (finding that the argument that an FCC regulation was contrary to the unambiguous language of the TCPA was a facial challenge).
 

 Here, there was no such finding. The district court concluded that the TCPA was unambiguous and therefore did not need to defer to the 2006 FCC Rule. But in reaching that conclusion, the district court did not "determine the validity of" the 2006 FCC Rule.
 
 28 U.S.C. § 2342
 
 . To the contrary, the court assumed the 2006 FCC Rule was valid and used it to bolster its interpretation of the TCPA. The district court concluded, "A plain reading of the TCPA and the [2006] FCC [Rule] demonstrates that they intend to curtail the transmission of faxes with a commercial aim." J.A. 135. Critically, the district court did not find the language of TCPA and the 2006 FCC Rule to be in conflict, and logically, by virtue of
 
 using and interpreting
 
 the 2006 FCC Rule, the district court could not have invalidated it. Accordingly, it did not exceed the Hobbs Act's jurisdictional bounds.
 

 B.
 

 The majority points to three cases in support of its jurisdictional analysis: (1)
 
 Nack v. Walburg
 
 ,
 
 715 F.3d 680
 
 (8th Cir. 2013) ; (2)
 
 Leyse v. Clear Channel Broadcasting, Inc.
 
 ,
 
 545 Fed.Appx. 444
 
 (6th Cir. 2013) ; and (3)
 
 Mais v. Gulf Coast Collection Bureau, Inc.
 
 ,
 
 768 F.3d 1110
 
 (11th Cir. 2014).
 
 [1]
 
 The majority posits that these
 cases demonstrate that "[e]very other circuit to consider the [jurisdictional] issue has reached the same result."
 
 Ante
 
 at ----. But these cases are inapposite.
 

 In both
 
 Nack
 
 and
 
 Leyse
 
 , the issue presented was a facial challenge to an FCC regulation. In
 
 Nack
 
 , the defendant asserted an affirmative defense that the FCC regulation, as the basis of the plaintiff's action, was contrary to the unambiguous language of the TCPA.
 
 See
 

 715 F.3d at 685-86
 
 . The Eighth Circuit construed this argument as a challenge to the validity of the regulation.
 
 See
 
 id.
 

 Accordingly, the district court violated the Hobbs Act by considering it.
 
 See
 
 id.
 

 In
 
 Leyse
 
 , the plaintiff argued to the district court that the FCC rule was invalid or should be set aside because of procedural deficiencies in its promulgation.
 
 Leyse
 
 ,
 
 545 Fed.Appx. at 458
 
 . On appeal, the plaintiff characterized his argument as an as-applied challenge and contended that the lawsuit was not "a proceeding to enjoin, set aside, annul, or suspend an order of the [FCC], and therefore was not barred by the Hobbs Act."
 

 Id.
 

 at 455
 
 (internal quotation marks omitted). The Sixth Circuit determined that the plaintiff's attacks were "exactly the kind of facial attacks on the validity of FCC orders that the Hobbs Act meant to confine."
 

 Id.
 

 at 458
 
 . Accordingly, the Sixth Circuit concluded that the Hobbs Act deprived the district court of jurisdiction over the argument that the FCC regulation was invalid.
 
 See
 

 id.
 

 at 459
 
 .
 

 In contrast, here there is no facial challenge to the 2006 FCC Rule. Appellant did not argue to the district court that the 2006 FCC Rule is contrary to the plain language of the TCPA. It also did not argue that the 2006 FCC Rule should be set aside due to procedural deficiencies. Appellant merely argued for a specific interpretation of the 2006 FCC Rule, and Appellee argued for a different interpretation.
 

 Mais
 
 is also distinguishable. In
 
 Mais,
 
 the district court refused to afford any deference to the FCC rule because the rule conflicted with the clear meaning of the TCPA.
 
 See
 

 Mais
 
 ,
 
 768 F.3d at 1115
 
 .
 

 The Eleventh Circuit held that "the district court exceeded its jurisdiction by declaring the ... FCC [r]uling to be inconsistent with the TCPA."
 

 Id.
 

 at 1119
 
 . The Eleventh Circuit determined that "[b]y refusing to enforce the FCC's interpretation" because it was inconsistent with the TCPA, "the district court exceeded its power."
 

 Id.
 

 at 1119
 
 . Here, the district court did not find that the TCPA and the 2006 FCC Rule were in conflict. To the contrary, the district court assumed the 2006 FCC Rule was valid and harmonized the rule with its conclusions about the TCPA.
 

 II.
 

 Chevron
 
 Analysis
 

 I now turn to whether an "unsolicited advertisement" under the TCPA must have a commercial aim. In doing so, I apply the familiar
 
 Chevron
 
 framework.
 
 See
 

 Chevron, U.S., Inc. v. Nat. Res. Def. Council
 
 ,
 
 467 U.S. 837
 
 , 842-44,
 
 104 S.Ct. 2778
 
 ,
 
 81 L.Ed.2d 694
 
 (1984). At step one, I conclude that the TCPA is ambiguous as to whether a fax must have a commercial aim to be an "advertisement." Accordingly, I would defer to the 2006 FCC Rule. At step two, I determine that in order for a fax to be an "advertisement," the 2006 FCC Rule requires that it have a commercial aim. Thus, I would affirm the district court.
 

 A.
 

 At step one of the
 
 Chevron
 
 analysis, we must determine whether the TCPA's definition of "unsolicited advertisement" unambiguously requires faxes to have a commercial aim. Under the TCPA, a person may not "send, to a telephone facsimile machine, an unsolicited advertisement" unless certain notice requirements are met.
 
 47 U.S.C. § 227
 
 (b)(1)(C). The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services."
 

 Id.
 

 § 227(a)(5). Because (1) "advertis[ing]" does not definitely implicate a profit seeking motive; and (2) "commercial" may or may not modify "quality," I conclude that the TCPA is ambiguous on this point.
 

 When interpreting statutory language, we begin by giving the words of the statute their plain meaning.
 
 See
 

 Gilbert v. Residential Funding LLC
 
 ,
 
 678 F.3d 271
 
 , 276 (4th Cir. 2012). According to the New Oxford American Dictionary, "advertise" means to "describe or draw attention to ... in a public medium in order to promote sales or attendance."
 
 Advertise
 
 , New Oxford American Dictionary (3d ed. 2010). But the word is also commonly understood to not necessarily implicate a profit seeking motive. The New Oxford American Dictionary further defines "advertise" as to "notify (someone) of something" and to "make (a quality or fact) known."
 

 Id.
 

 Additionally, while the New Oxford American Dictionary defines "commercial" as "making or intended to make a profit," the TCPA's definition of "unsolicited advertisement" is unclear as to whether "commercial" modifies "quality."
 
 Commercial
 
 , New Oxford American Dictionary (3d ed. 2010).
 

 The plain language of the statute suggests two competing interpretations: one that requires a commercial aim and one that does not. It follows that a commercial aim
 
 would not be
 
 required if one accepts the common usage of "advertise" and believes "commercial" is divorced from "quality." Under this interpretation, a fax that simply points out the quality of a good would qualify as an unsolicited advertisement. But, it also follows that a commercial objective
 
 would be
 
 required if one accepts the "promote sales or attendance" definition of "advertise" and believes "commercial"
 

 modifies "quality." As a result, the TCPA is ambiguous.
 

 B.
 

 I thus move on to step two of the
 
 Chevron
 
 analysis. At step two, I conclude that the 2006 FCC Rule requires a commercial aim and is entitled to substantial deference because it is a "permissible" construction of the TCPA.
 
 Chevron
 
 ,
 
 467 U.S. at 843
 
 ,
 
 104 S.Ct. 2778
 
 .
 

 The majority determines that a "natural and logical reading" of the 2006 FCC Rule creates a prophylactic rule that all faxes offering free goods and services are "unsolicited advertisements" under the TCPA.
 
 Ante
 
 at ----. But in my view, the 2006 FCC Rule makes clear that even faxes that purport to have no commercial aim on their face must nonetheless have a commercial aim in order to be an "advertisement" under the TCPA.
 

 The 2006 FCC Rule states:
 

 facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition. In many instances "free" publications are often part of an overall marketing campaign to sell property, goods, or services. For instance, while the publication itself may be offered at no cost to the facsimile recipient, the products promoted within the publication are often commercially available. Based on this, it is reasonable to presume that such messages describe the "quality of any property, goods, or services." Therefore, facsimile communications regarding such free goods and services, if not purely "transactional," would require the sender to obtain the recipient's permission beforehand, in the absence of an [established business relationship].
 

 Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991; Junk Fax Prevention Act of 2005,
 
 71 Fed. Reg. 25,967
 
 , 25,973 (May 3, 2006).
 

 As noted, in interpreting an agency's construction, we begin with the text.
 
 [2]
 

 See
 

 Gilbert v. Residential Funding LLC
 
 ,
 
 678 F.3d 271
 
 , 276 (4th Cir. 2012). A plain reading of the 2006 FCC Rule demonstrates that its objective is to prevent faxes with a commercial aim. Its objective is not to prevent faxes that promote free goods or services per se.
 
 See
 

 Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharms., Inc.
 
 ,
 
 847 F.3d 92
 
 , 96 (2d Cir. 2017). The 2006 FCC Rule explains that the "free" offering is "often part of an overall marketing campaign" and "the products promoted within the ['free'] publication are often commercially available."
 
 71 Fed. Reg. at 25,973
 
 . In this way, the 2006 FCC Rule reflects the reality that "[b]usinesses are always eager to promote their wares and usually do not fund [publications, presentations, goods, or services] for no business purpose."
 
 Boehringer
 
 ,
 
 847 F.3d at 95
 
 .
 

 In order to reach its conclusion, the majority reads the first sentence of the 2006 FCC Rule-"[F]acsimile messages that promote goods or services even at no cost ... are unsolicited advertisements under the TCPA's definition."-in isolation.
 
 71 Fed. Reg. at 25
 
 ,973 ;
 
 see
 

 ante
 
 at ---- ("The first sentence of the relevant portion
 is clear and unambiguous."). To be sure, if read in a vacuum, the first sentence seems to create a prophylactic rule. However, it is informed by the language that follows.
 

 Specifically, the second sentence of the 2006 FCC Rule redefines the subject faxes as those promoting free offerings with a commercial aim. It states, "In many instances 'free' publications are often part of an overall marketing campaign to sell property, goods, or services."
 
 71 Fed. Reg. at 25,973
 
 . The 2006 FCC Rule then refers to "such messages"-redefined as those with a commercial aim-and explains, "[I]t is reasonable to presume that such messages describe the 'quality of any property, goods, or services.' "
 

 Id.
 

 Reading the 2006 FCC Rule as a whole, taking into account every sentence, reveals that a fax with a free offering must necessarily include a commercial aim to qualify as an "advertisement" under the TCPA.
 

 This is a "permissible" construction.
 
 Chevron
 
 ,
 
 467 U.S. at 843
 
 ,
 
 104 S.Ct. 2778
 
 . "A construction is permissible if it is reasonable ...."
 
 Cetto v. LaSalle Bank Nat'l Ass'n
 
 ,
 
 518 F.3d 263
 
 , 275 (4th Cir. 2008). This construction is certainly reasonable because it "is a logical interpretation and fits into one of two possible interpretations of the statute based on the plain meaning of the text."
 

 Id.
 

 at 276
 
 . Accordingly, this interpretation must be accepted.
 

 III.
 

 Pleading Standard
 

 Having determined that the 2006 FCC Rule requires a commercial aim, I now turn to the relevant pleading standard. Because the TCPA is a remedial statute, it "should be liberally construed and ... interpreted ... in a manner tending to discourage attempted evasions by wrongdoers."
 
 Scarborough v. Atl. Coast Line R. Co.
 
 ,
 
 178 F.2d 253
 
 , 258 (4th Cir. 1949) ;
 
 see
 

 Gager v. Dell Fin. Servs
 
 .
 
 , LLC
 
 ,
 
 727 F.3d 265
 
 , 271 (3d Cir. 2013) ("The TCPA is a remedial statute that was passed to protect consumers ...."). "[R]equiring plaintiffs to plead specific facts" showing a commercial aim "would impede the purposes of the TCPA" because plaintiffs will likely face difficulty in discerning whether a fax has a commercial aim.
 
 See
 

 Boehringer
 
 ,
 
 847 F.3d at 96
 
 . Indeed, the 2006 FCC Rule recognizes this fact by highlighting that "in many instances 'free' publications are often part of an overall marketing campaign to sell property, goods, or services."
 
 71 Fed. Reg. at 25,973
 
 .
 

 Accordingly, the burden at the pleading stage is minimal. "[W]here it is alleged that a firm sent an unsolicited fax promoting a free [publication containing products or services] that relate[ ] to the firm's [business], there is a plausible conclusion that the fax had the commercial purpose of promoting those products or services."
 
 Boehringer
 
 ,
 
 847 F.3d at 95
 
 . A plaintiff satisfies its burden at the pleading stage where facts are alleged that the publication's contents relate to the defendant's business.
 
 See
 

 id.
 

 at 96
 
 ("There must be a commercial nexus to a firm's business, i.e., its property, products, or services; that, in our view, is satisfied at the pleading stage where facts are alleged that the subject of the free seminar relates to that business."). If the plaintiff meets this minimal burden, the defendant may rebut the inference, but only after discovery.
 

 Here, Appellant has not met even this minimal burden. Appellant merely states in its complaint: "Each of the [Appellees] benefit or profit from the sale of the ... [eBook]." J.A. 11 ¶ 12. This statement is contradicted by the fax itself, which demonstrates that the eBook is not offered for sale.
 
 See
 

 id.
 
 at 23 ("FREE 2014
 
 Physicians' Desk Reference
 
 eBook-Reserve Now"). Appellant does not even hint that the contents of the eBook relate to Appellees'
 

 business. Thus, Appellant has failed to state a claim.
 

 IV.
 

 For the foregoing reasons, I would affirm the district court, and I respectfully dissent.
 

 The majority also uses
 
 Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.
 
 ,
 
 847 F.3d 92
 
 (2d Cir. 2017), to interpret the 2006 FCC Rule and adopts the concurring opinion in that case.
 
 See
 

 ante
 
 at ---- - ----. However, it fails to address a significant omission in
 
 Boehringer
 
 .
 
 See
 
 id.
 

 As a matter of background, the district court in
 
 Boehringer
 
 interpreted the 2006 FCC Rule to require a commercial aim.
 
 See
 

 Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharms., Inc
 
 ., No. 3:14-cv-405,
 
 2015 WL 144728
 
 , at *3 (D. Conn. Jan. 12, 2015). It found that this interpretation conformed with the TCPA's prohibition on the unsolicited sending of "material advertising the commercial availability or quality of any property, goods, or services" and the FCC's exclusion of "messages that do not promote a commercial product or service" from unsolicited advertisements.
 

 Id.
 

 (internal quotation marks omitted). There was no facial challenge to the 2006 FCC Rule, and the district court did not determine that the TCPA and the 2006 FCC Rule were in conflict. The district court further held that Physicians Healthsource failed to plead specific facts to prove a commercial element and therefore dismissed the claim.
 
 See
 

 id.
 

 at *5-*6.
 

 On appeal to the Second Circuit, Physicians Healthsource argued in its opening brief that the district court violated the Hobbs Act because it "refused to apply the plain language of the [2006 FCC R]ule." Appellant's Br. at 22,
 
 Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.
 
 , No. 15-288 (2d Cir. Feb. 2, 2015; filed Mar. 27, 2015), ECF No. 27. The Second Circuit did not address this argument and instead addressed the merits, determining that the 2006 FCC Rule required a commercial aim.
 
 See
 

 Boehringer
 
 ,
 
 847 F.3d at 95-96
 
 . The court ultimately vacated and remanded the case for discovery upon concluding that Physicians Healthsource successfully stated a claim for relief.
 
 See
 

 id.
 

 at 96-97
 
 .
 

 I see no difference between the district court's decision in
 
 Boehringer
 
 and the district court's decision here. As in
 
 Boehringer
 
 , the district court here interpreted the 2006 FCC Rule in accordance with the TCPA to require a commercial aim.
 

 The majority's interpretation of the 2006 FCC Rule goes beyond the plain meaning of the text. The majority attempts to divine the FCC's intent when it states: "Offers that are purportedly 'free' often have commercial strings attached .... For this reason, the FCC chose to interpret the term 'advertisement' broadly to include any offer of a free good or service."
 
 Ante
 
 at ----.