# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1365
_____

Ronda DePriest

*Plaintiff - Appellant*

v.

Dennis Milligan, individually and in his official capacity

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: January 13, 2016
Filed: May 26, 2016
_____

Before WOLLMAN, MELLOY, and COLLOTON, Circuit Judges.
_____

MELLOY, Circuit Judge.

Plaintiff Ronda DePriest filed two consolidated lawsuits against Dennis Milligan, alleging various gender discrimination and retaliation claims. The district court[1] granted Milligan's motion for summary judgment as to DePriest's

_____

[1] The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

discrimination and retaliation claims and dismissed without prejudice DePriest's state constitutional claims. We affirm.

## I. Background

Ronda DePriest served as an at-will employee in the Saline County, Arkansas, Circuit Clerk's office from 1991 to 2010. She was appointed as Chief Deputy Clerk in 2002. In this capacity, DePriest handled real estate filings and some personnel and financial matters. The Chief Deputy Clerk works under and reports to the Circuit Clerk, who is an elected official in the County. In 2010, Dennis Milligan was elected Circuit Clerk in a close contest against long-time incumbent Doug Kidd. DePriest supported Kidd in the election by wearing his campaign shirt and walking in a parade on his behalf. It is undisputed that when a new Circuit Clerk is elected, he or she must appoint or reappoint individuals to staff the office. DePriest had been reappointed by Kidd each time he won an election.

On December 27, 2010, shortly before Milligan took office as Circuit Clerk, DePriest learned that she would not be retained as an employee under Milligan. Instead, Milligan hired Jim Harris, an experienced political operative, to fill DePriest's position. In contrast to DePriest's largely administrative role, Milligan envisioned his Chief Deputy would serve in a chief-of-staff capacity. Notably, Harris was responsible for managing public relations, advising Milligan, attending political functions, and performing some of the administrative tasks DePriest had done. At the time he took office, Milligan had not met DePriest and he contends she was not someone he could trust in this role. The parties agree that Harris's job duties are different from those that DePriest performed as Chief Deputy. However, DePriest contends that Harris is not as qualified to hold the position because she had nearly twenty years of experience.

In 2011, following DePriest's dismissal, an electronic record manager position opened in the office. DePriest contends she was qualified for the position and should have been hired. However, she did not apply for the position because she claims it was not publicly advertised. Evidence in the record shows the position was advertised on the County website and the office received nine applications. DePriest does not rebut this evidence, except to allege she did not see the position posted on the County website. There is no indication that a vacancy could be filled by an individual who did not apply for the position.

On April 12, 2012, DePriest filed suit against Milligan in his official and individual capacities in state court. She claimed Milligan: (1) dismissed her in retaliation for her political affiliation with Kidd in violation of the First Amendment; (2) discriminated against her because she is a woman by dismissing her, hiring a less qualified man, and not allowing her to reapply for another position in violation of Title VII, the Equal Protection Clause through § 1983, the Government Employee Rights Act ("GERA"),[2] and the Arkansas Civil Rights Act ("ACRA"); and (3) violated her right to petition the government under Article II, section 4 of the Arkansas Constitution. Milligan removed the case to federal court. On September 30, 2013, following discovery, the district court granted Milligan's motion for summary judgment as to the First Amendment political affiliation claim. The district court granted a stay as to the GERA and gender discrimination claims to allow DePriest to submit these claims to the EEOC.[3] Subsequently, the EEOC reviewed DePriest's

_____

[2] The GERA is part of the 1991 amendments to the Civil Rights Act. It provides discrimination protections to state and local government employees who are "chosen or appointed by a person elected to public office . . . (1) to be a member of the elected official's personal staff; (2) to serve the elected official on the policymaking level; or (3) to serve the elected official as an immediate advisor with respect to the exercise of the constitutional or legal powers of the office." 42 U.S.C. § 2000e-16c(a).

[3] Claims brought under the GERA follow a different procedural path than most claims under federal discrimination statutes. After an individual has filed a GERA

claims twice, concluding both times she did not meet the criteria for coverage under the GERA. DePriest did not appeal the EEOC's determination.

In 2013, DePriest applied for two open positions in the Circuit Clerk's office. She was among three candidates interviewed for the first position, but was not interviewed for the second position. Milligan indicated that DePriest was not hired for either position because she did not have experience with a new computer system that Milligan had implemented in the office. DePriest contends she was not hired because she is a woman and because of her pending lawsuit against Milligan. Both positions were filled by women who had experience with the computer system because they were currently employed in the Circuit Clerk's office in other capacities.

---

complaint with the EEOC, the EEOC "shall determine whether a violation has occurred and shall set forth its determination in a final order." 42 U.S.C. § 2000e-16c(b)(1). Judicial review is available for "[a]ny party aggrieved by a final order . . . under chapter 158 of Title 28 [(the Administrative Orders Review Act, 28 U.S.C. §§ 2341–2353)]." Id. § 2000e-16c(c). The Administrative Orders Review Act provides judicial review procedures for actions by several federal agencies. See, e.g., Nack v. Walburg, 715 F.3d 680, 685–86 (8th Cir. 2013) (noting that the Act applies to determining the validity of Federal Communications Commission orders). For the purposes of the GERA, "the [EEOC] shall be an 'agency' as that term is used in [the Act]." 42 U.S.C. § 2000e-16c(c). The few courts that have interpreted the GERA have concluded that the courts of appeals, rather than the district courts, have exclusive jurisdiction to review final orders from the EEOC on GERA claims. See Crain v. Butler, 419 F. Supp. 2d 785, 788 (E.D.N.C. 2005); Stitz v. City of Eureka Springs, Ark., 9 F. Supp. 2d 1046, 1056 (W.D. Ark. 1998); see also Nack, 715 F.3d at 686 ("[T]he court of appeals [has] exclusive jurisdiction to determine the validity of [agency] orders." (citing 28 U.S.C. § 2342)). To seek judicial review, the aggrieved individual must "within 60 days after entry [of the final order], file a petition to review the order in the court of appeals wherein venue lies." 28 U.S.C. § 2344; see also B.J. McAdams, Inc. v. I.C.C., 551 F.2d 1112, 1114 (8th Cir. 1977) (discussing this provision in the context of another agency covered by the Act).

On January 16, 2014, while the first lawsuit remained pending, DePriest again filed suit against Milligan in state court. She claimed Milligan's failure to hire her in 2013 was in retaliation for her lawsuit against him, which violated the First Amendment, Title VII, and the ACRA. Milligan again removed the case to federal court where it was consolidated with the original case. Milligan moved for summary judgment in the consolidated case on all of the remaining unresolved issues.

In an order addressing the remaining claims in both lawsuits, the district court granted summary judgment in favor of Milligan as to DePriest's federal claims and declined to exercise jurisdiction over her state constitutional law claims. In particular, the district court concluded DePriest's gender discrimination claim under the GERA had no merit because the statute does not apply to her and, even if it did apply, the district court determined it would not have jurisdiction to review her claim. Regarding DePriest's claims under Title VII, the ACRA, and the Equal Protection Clause through § 1983, the district court determined Milligan's decision to dismiss DePriest after adding political and personal loyalty aspects to the Chief Deputy position did not violate state or federal law. The district court concluded that DePriest's argument that she is more qualified than Harris fails to establish Milligan's reason was merely a pretext for discrimination. The district court also considered and granted summary judgment as to DePriest's gender discrimination claim based on Milligan's failure to hire her for the electronic records manager position, for which she did not apply, in 2011.

Next, the district court turned to DePriest's claims of retaliation in her second lawsuit. Regarding DePriest's claim that Milligan violated the First Amendment when he retaliated against her for filing a lawsuit against him, the district court concluded DePriest failed to show that Milligan's nondiscriminatory reason for not hiring her was a pretext. Similarly, the district court concluded DePriest failed to establish a prima facie case of Title VII retaliation because she could not show that her

lawsuit against Milligan was a determinative factor in not hiring DePriest for the two positions in 2013. DePriest appeals from this judgment.

## II. Discussion

We review a grant of summary judgment de novo, construing the record in the light most favorable to the nonmoving party. Rickard v. Swedish Match N. Am., Inc., 773 F.3d 181, 184 (8th Cir. 2014). "To survive summary judgment, a plaintiff 'must substantiate [her] allegations with sufficient probative evidence that would permit a finding in [her] favor on more than mere speculation, conjecture, or fantasy.'" Id. (quoting Moody v. St. Charles Cnty., 23 F.3d 1410, 1412 (8th Cir. 1994)). We may affirm an order granting summary judgment "on any basis supported by the record." Keefe v. City of Minneapolis, 785 F.3d 1216, 1222 (8th Cir. 2015) (quoting Saulsberry v. St. Mary's Univ. of Minn., 318 F.3d 862, 866 (8th Cir. 2003)).

## A. First Amendment Claim

DePriest claims Milligan violated the First Amendment by dismissing her from the Chief Deputy position because of her political affiliations. When the sole reason for a dismissal is the employee's political affiliation, we apply the test set forth by the Supreme Court in Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980). In such circumstances, "a dismissal solely on account of an employee's political affiliation violates the First Amendment unless 'the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.'" Langley v. Hot Spring Cnty., Ark., 393 F.3d 814, 817 (8th Cir. 2005) (quoting Branti, 445 U.S. at 518). In order to survive summary judgment on a claim of politically motivated dismissal, the plaintiff must "submit[] sufficient evidence that political affiliation or loyalty was a motivating factor in the dismissal." Id. If the plaintiff satisfies this burden, the defendant must "establish[] *either* that the political motive is an appropriate requirement for the job,

-6-

*or* that the dismissal was made for mixed motives and the plaintiff would have been discharged in any event." Id. "In general, personal loyalty is 'an appropriate requirement' where the individual 'reports directly to the [chief executive] and his duties include public relations and responsibility for . . . long-range planning.'" Id. at 818 (quoting Johnson v. City of W. Memphis, 113 F.3d 842, 844 (8th Cir. 1997)) (alterations in original).

Milligan seems to concede that he dismissed DePriest from her Chief Deputy position due to her political affiliations. Thus, the burden shifts to Milligan to prove political loyalty is an appropriate job requirement for the Chief Deputy position. The parties agree that Milligan made changes to the Chief Deputy position and that DePriest's replacement performs duties related to policymaking and politics that she had not performed. In particular, Milligan required his Chief Deputy to provide advice, to be available at all times, and to speak on Milligan's behalf at public events. On this basis, we find it appropriate for Milligan to require personal and political loyalty in the Chief Deputy position. See id.; Johnson, 113 F.3d at 844. As such, it was permissible for Milligan to dismiss DePriest on the basis of her political affiliations as a matter of law. Therefore, we affirm the district court's grant of summary judgment on this claim.

### B. Gender Discrimination Claims

DePriest raises gender discrimination claims under the GERA, the Equal Protection Clause through § 1983, Title VII, and the ACRA. Regarding the GERA claims, the EEOC concluded the GERA does not apply to DePriest. If properly presented, we will set aside an EEOC final order on a GERA claim if the order is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not consistent with law; (2) not made consistent with required procedures; or (3) unsupported by substantial evidence." 42 U.S.C. § 2000e-16c(d). However, we need not review the merits of the EEOC's determination because DePriest did not make a timely appeal of the order

directly to this Court, as required by statute. See Stitz, 9 F. Supp. 2d at 1056 ("[W]e do not believe that under the GERA, the district court is the court that can exercise judicial review of an EEOC determination. Rather, we believe that the court of appeals has such jurisdiction."); 42 U.S.C. § 2000e-16c(c) (providing that judicial review of GERA claims is governed by Chapter 158 of Title 28, which is the Administrative Orders Review Act); 28 U.S.C. § 2342 (providing the court of appeals with exclusive jurisdiction to review an agency's final orders); id. § 2344 (providing that a petition for review of a final order must be filed within 60 days).

As to DePriest's remaining gender discrimination claims, we apply the same standard to discrimination claims arising under § 1983, Title VII, and the ACRA. See Gibson v. Am. Greetings Corp., 670 F.3d 844, 853 (8th Cir. 2012) (applying the same standard to a claim arising under Title VII and the ACRA); Richmond v. Bd. of Regents of Univ. of Minn., 957 F.2d 595, 598 (8th Cir. 1992) (applying the same standard to a claim arising under § 1983 and Title VII). In the absence of direct evidence, we analyze employment discrimination claims under the McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973). First, the plaintiff must establish a prima facie case for gender discrimination, which requires showing: "(1) she was a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) these are facts that give rise to an inference of unlawful gender discrimination." Fiero v. CSG Systems, Inc., 759 F.3d 874, 878 (8th Cir. 2014) (quoting Wells v. SCI Mgmt., L.P., 469 F.3d 697, 700 (8th Cir. 2006)). "The burden then shifts to [the] defendant to articulate a legitimate, nondiscriminatory reason for its action. If [the] defendant meets that minimal burden, [the] plaintiff must show that the proffered nondiscriminatory reason is merely a pretext for unlawful . . . discrimination." Id. (quoting Putman v. Unity Health Sys., 348 F.3d 732, 735 (8th Cir. 2003)) (alteration in original). To survive summary judgment, the plaintiff "must point to enough admissible evidence to raise genuine doubt as to the legitimacy of the

defendant's motive." Id. (quoting Barnhardt v. Open Harvest Co-op, 742 F.3d 365, 371 (8th Cir. 2014)).

DePriest claims three instances of gender discrimination: (1) Milligan's failure to reappoint her upon being elected; (2) Milligan's failure to offer her another position in the office in January 2011; and (3) Milligan's failure to hire her for the electronic records manager position in June 2011. Analyzing each of these claims within the McDonnell Douglas framework, we conclude that DePriest cannot survive summary judgment on any of her claims.

First, while we find it plausible that DePriest established a prima facie case of gender discrimination as to Milligan's failure to reappoint her in 2011, DePriest fails to show Milligan's reasons for doing so were pretextual. Milligan contends he sought to transform the Chief Deputy position into a policymaking, politics-centered position that would be held by an individual he personally trusted. DePriest argues this is pretext because she had more experience and was more qualified than Harris, the man Milligan hired to replace her. However, DePriest also admits that the Chief Deputy position changed under Milligan's leadership, and she provides no evidence as to how she remained more qualified given the new job requirements. Even viewing the facts in the light most favorable to DePriest, her pretext argument does not hold water. DePriest does not identify any evidence that would allow a reasonable jury to conclude Milligan's proffered reason for dismissing her was pretext for gender discrimination. See Fiero, 759 F.3d at 878–79.

Second, regarding Milligan's failure to offer DePriest another position in the office in January 2011, DePriest has not alleged adequate facts to establish a prima facie case of gender discrimination. DePriest did not apply for any open positions, nor was Milligan required to find her a suitable position upon dismissing her from the Chief Deputy position.

Finally, DePriest has not established a prima facie case of discrimination as to her claim that Milligan failed to hire her for the electronic records manager position in June 2011. The parties agree that DePriest did not apply for this position. DePriest argues she did not apply because the opening was not publicly posted, but she cites to no evidence to support this assertion. Milligan provided an affidavit and several exhibits from Christy Peterson, the County Personnel Manager, to support his contention that the position was in fact posted. DePriest offered nothing to rebut this evidence and create a triable question of fact. See Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) ("The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986)).

In light of the foregoing analysis, we affirm the district court's grant of summary judgment as to DePriest's gender discrimination claims.

### C. Retaliation Claims

DePriest claims Milligan retaliated against her for filing the first lawsuit against him when he did not hire her for either of the open positions in 2013. DePriest proceeds under three theories: violations of the First Amendment through § 1983, Title VII, and the ACRA.

Because DePriest has offered no direct evidence of retaliation, we evaluate her Title VII claim under the McDonnell Douglas burden-shifting framework. Fiero, 759 F.3d at 880. To establish a prima facie case of retaliation, a plaintiff must show that: "(1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two." Id. at 880 (quoting Wells v. SCI Mgmt., L.P., 469 F.3d 697, 702 (8th Cir. 2006)). If the plaintiff makes this prima facie showing, the employer "must then rebut it 'by presenting

evidence of a legitimate, non-retaliatory reason for the action it took against [the plaintiff].'" Id. (quoting E.E.O.C. v. Kohler, 335 F.3d 766, 772–73 (8th Cir. 2003)). "If [the employer] satisfies this burden, [the plaintiff] is 'then obliged to present evidence that (1) creates a question of fact as to whether [the employer's] proffered reason was pretextual and (2) creates a reasonable inference that [the employer] acted in retaliation.'" Id. (quoting Smith v. Allen Health Sys., Inc., 302 F.3d 827, 833 (8th Cir. 2002)). We analyze First Amendment and ACRA retaliation claims under the same framework as claims of retaliation under Title VII.[4] Tyler v. Univ. of Ark. Bd. of Trs., 628 F.3d 980, 986 (8th Cir. 2011) (considering a First Amendment retaliation claim); Brown v. City of Jacksonville, 711 F.3d 883, 892 (8th Cir. 2013) (considering an ACRA retaliation claim).

Viewing the evidence in the light most favorable to DePriest, we assume that DePriest has established a prima facie case for retaliation under the First Amendment, Title VII, and ACRA. At the second step, Milligan offered several reasons for not hiring DePriest in 2013, including that DePriest was not familiar with the new

---

[4] Our case law suggests two possible frameworks for evaluating First Amendment retaliation claims: McDonnell Douglas (discussed above) and Mt. Healthy City School District v. Doyle, 429 U.S. 274, 287 (1977) (requiring that the plaintiff "show that his conduct was constitutionally protected, and that this conduct was a 'substantial factor' or . . . a 'motivating factor'" in the adverse decision before the burden shifts to the defendant to show "it would have reached the same decision . . . even in the absence of the protected conduct"). Some cases suggest the two frameworks may apply in distinct circumstances. See Davison v. City of Minneapolis, Minn., 490 F.3d 648, 663 (8th Cir. 2007) (Colloton, J., dissenting in part and concurring in part) (arguing Mt. Healthy applies where the retaliation claim is supported by direct evidence, while McDonnell Douglas applies where direct evidence is not available). The district court in this case considered DePriest's claims under both frameworks and concluded that summary judgment was appropriate regardless of the standard applied. We agree.

computer system.[5]  In an attempt to show pretext, DePriest points to an isolated statement from Milligan's 2012 deposition to the effect that Milligan knows of no legitimate nondiscriminatory reason for his desire to not hire DePriest.  This statement was speculative as it was made before DePriest had applied for any job in the office. Moreover, we need not accept Milligan's legal conclusion as fact.  See Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 801 (8th Cir. 2004) (noting that we must "disregard portions of . . . depositions that . . . purport to state legal conclusions as fact").  The record shows that Milligan considered DePriest as one of three applicants invited to interview for one of the open positions.  The applicants that Milligan subsequently hired had experience with the new computer system, which DePriest admittedly lacked.  Considering the evidence in the record, we conclude that DePriest failed to show a genuine issue of material fact exists or raise an inference of unlawful retaliation.   See Fiero, 759 F.3d at 880.  We affirm the district court's grant of summary judgment as to DePriest's retaliation claims.

### III. Conclusion

Based on the foregoing analysis, we affirm the district court's grant of summary judgment and its decision to dismiss the state law claims.

_____

[5] Our review of Milligan's deposition reveals at least two other reasons behind his decision not to hire DePriest: (1) he "ha[s] the right as an elected official to hire who [he] want[s] to hire"; and (2) DePriest would not "work out well" in the office. While it is unclear how these reasons would support an inference of retaliation, we conclude that Milligan's assertion that DePriest is not trained in the new computer system satisfies his burden to present a nonretaliatory reason for failing to hire her.