KLAPHAKE, Judge*
Appellants Firefighters Union Local 4725 and its President, Mark Turner (collectively Union), challenge the district court's summary-judgment dismissal of their claims arising out of respondent City of Brainerd's (City) decision to eliminate paid firefighter positions within the fire department.
Because the plain language of Minn. Stat. § 179A.13, subd. 2(2), provides that it is an unfair labor practice for an employer to interfere with the existence and administration of a union, we conclude the district court erred, as a matter of law, by failing to grant summary judgment to Union on prong two of its Minnesota Public Employees Labor Relations Act (PELRA) claim. Accordingly, we reverse and remand to the district court to enter judgment in favor of Union on Count I of the complaint and to fashion an appropriate remedy.
Because the district court appropriately concluded that the "Resolution was authorized by the existing Charter," and, therefore, City did not violate Minn. Stat. § 410.12 (2016), we affirm its decision granting summary judgment to City on Count II of Union's complaint. We also conclude that Union failed to make a prima facie claim of retaliation because it did not prove a causal connection between the protected speech and restructuring of the fire *236 department. Thus, we affirm the district court's grant of summary judgment to City on Counts III and IV of Union's complaint.
FACTS
City is a home-rule charter city. It is located in Crow Wing County and has a population of 13,590. City was founded in 1870 and incorporated by a city charter in 1873. The charter authorizes City to establish and operate a "paid fire department." Brainerd, Minn., City Charter ch. 5, §§ 66-67 (1991) (the city charter).
Union, an affiliate of the International Association of Firefighters (IAFF), is a labor union representing the paid, full-time firefighters, known as Fire Equipment Operators (FEOs), previously employed by City. Turner, a former FEO for City, is Union president.
City's fire department offers protection from fires to City and the surrounding communities. Brainerd Fire Service Area (BFSA) is a group of cities and townships, including City, that pay "yearly fees to receive services from" City's fire department. City's fire department historically consisted of five to seven FEOs; approximately 40 paid, on-call personnel, known as Paid-on-Call employees (POCs); a fire chief; and an administrative specialist. The FEOs were union members and city employees, and received full employee benefits. The POCs, however, are not full-time employees or members of Union, do not have benefits, and are paid a "nominal sum." City operates two fire stations.
City has two major sources of revenue: property taxes and local government aid (LGA) provided to City by the State of Minnesota. City asserted that it has struggled financially for the "past eight years or so" due to decreased property tax values and decreases in LGA funding. In 2010, to decrease its budget and spending, City took steps to restructure the fire department. According to the city administrator in 2010, staffing the fire department entirely with POCs would have resulted in savings of $90,000 in 2010, and in the range of $500,000 in each subsequent year. The 2010 plan would have resulted in laying off all of the FEOs and hiring a full-time deputy fire chief. In March 2010, the city council voted to adopt the restructuring plan. Union and FEOs opposed the restructuring plan and argued that the restructuring would lower fire-department response times and put public safety at risk. As a result, in April 2010, the city council rescinded its vote to restructure the fire department.
In 2015, the fire department consisted of five FEOs, a fire chief, and approximately 36 POCs. In March 2015, City and Union negotiated and signed a new collective bargaining agreement with a three-year duration, running from January 2015 to December 2017.
Four months later, in July 2015, the city administrator informed Union by letter that City was again considering the "possible restructuring of the Fire Department to eliminate full-time [FEOs] for solely paid on-call firefighters as a cost-saving measure." In response to City's letter, Union "vigorously advocated resistance to the proposed elimination of the full-time department and [was] critical of the City and its administrators." Turner made several comments to local media and was "very vocal in Facebook postings" in opposition to the restructuring of the fire department.
In September 2015, the city council adopted, and the mayor approved, Resolution No. 45:15 (the resolution). The resolution reorganized the fire department to "eliminate all Fire Equipment Operator positions," "utilize Paid On-Call Firefighters for the provision of fire services," and *237 create a "new Assistant Fire Chief position."
The resolution went into effect on October 21, 2015; after the restructuring, the fire department consisted of a fire chief, a fire marshal/deputy fire chief, POCs, and an administrative specialist. As a result of the resolution, the FEOs were laid off and Union was dissolved.
Union sued City in January 2016. Union's complaint had four counts. In Count I, Union asserted that City engaged in unfair labor practices, in violation of PELRA, Minn. Stat. §§ 179A.01 -.25 (2016 & Supp. 2017). Count II asserted that the fire department restructuring was not permitted under City's charter and, thus, violated Minn. Stat. § 410.12, which requires that a city charter be amended through a specific process and not by a resolution passed by the city council. In Count III, Union asserted that City violated the First Amendment of the United States Constitution because it enacted the resolution in retaliation against Union for making critical statements regarding the restructuring. Finally, Count IV asserted that City violated article I, section 3, of the Minnesota Constitution by laying off the FEOs because they made critical statements regarding the restructuring and city administration.
Both parties filed for summary judgment. City argued that the district court should dismiss the entire case because Union "improperly styled" its challenge to City's restructuring plan as a claim under PELRA; the district court lacked subject-matter jurisdiction over some of Union's claims asserted in Count I; Count II should be dismissed because City complied with the collective-bargaining agreement and the Civil Service Rules when it restructured the fire department; and Counts III and IV should be dismissed because Union could not "make a prima facie showing of retaliation for protected speech." Union requested a partial summary judgment of liability on Counts I and II, arguing that City's restructuring of the fire department (1) violated PELRA, and (2) violated Minn. Stat. § 410.12, "which establishes specific procedures for amending a municipal home rule charter."
The district court granted City's motion for summary judgment in part and denied Union's motion. The district court granted summary judgment to City on Count II, determining that the "Resolution was authorized by the existing Charter, [and] there was no need to amend the Charter and thus no violation of Minn. Stat. § 410.12." Next, the district court granted summary judgment to City on Counts III and IV, after concluding that there were no genuine issues of material fact as to whether City violated Union's free-speech rights. After finding that Union did not improperly style their challenge to City's action as a PELRA claim, the district court determined that City had the "inherent managerial right" to "contract out" firefighting work. But the district court did not grant summary judgment on the PELRA claim entirely for two reasons: it determined that there were fact issues as to whether City (1) violated PELRA by improperly altering Union's "work jurisdiction"; and (2) negotiated the effects of the restructuring of the fire department with Union.
City filed a motion for reconsideration, arguing that Union did not raise the issues of "work jurisdiction or whether City had negotiated the effects of restructuring until they filed their reply brief in support of their motion for summary judgment." City also argued that work jurisdiction was not implicated in this case. City asserted that the district court's summary-judgment order was "internally inconsistent" because it determined "on one hand that the decision *238 to restructure the fire department was an exercise of inherent managerial rights that need not be negotiated with Union, but on the other hand that the decision to restructure was the subject of mandatory bargaining because it altered" Union's work jurisdiction.
The district court granted City's motion for reconsideration. The district court dismissed Union's remaining PELRA claims and concluded that Union did not "properly raise the issue of 'work jurisdiction' " because the issue was raised in "reply to [Union's] own motion for summary judgment" rather than in response to City's motion. The district court granted City's "motion for summary judgment in total," and entered final judgment for City. Union appeals.
ISSUES
I. Did the district court err by granting summary judgment to City on Union's PELRA claims?
II. Did the district court err by granting summary judgment on Union's claim that the resolution violated Minn. Stat. § 410.12 ?
III. Did the district court err by determining that Union failed to establish a prima facie case of retaliation?
ANALYSIS
A motion for summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.01.[1] This court reviews the district court's legal conclusions on summary judgment de novo, viewing the evidence in the light most favorable to the party against whom summary judgment was granted. Commerce Bank v. W. Bend Mut. Ins. Co. , 870 N.W.2d 770, 773 (Minn. 2015). "In doing so, [this court] determine[s] whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC , 790 N.W.2d 167, 170 (Minn. 2010).
I. City's restructuring of the fire department violated PELRA's prohibition against interfering with the "existence or administration" of a union and constituted an unfair labor practice.
Union argues that the district court erred by dismissing the "three-pronged" PELRA claims in this case. City responds that the district court appropriately rejected Union's claim that the restructuring was a "per se violation of PELRA" and determined that the restructuring was "an exercise of inherent managerial policy." City asks this court to affirm the district court's decision.
PELRA governs the relationship between public employers and their employees. PELRA's purpose is to promote "orderly and constructive relationships *239 between all public employers and their employees." Minn. Stat. § 179A.01(a). In its complaint, Union alleged that City had engaged in unfair labor practices. Unfair labor practices are defined in Minn. Stat. § 179A.13, subd. 2. Section 179A.13 provides that:
Public employers, their agents and representatives are prohibited from
(1) interfering, restraining, or coercing employees in the exercise of the rights guaranteed in sections 179A.01 to 179A.25 ;
(2) dominating or interfering with the formation, existence, or administration of any employee organization or contributing other support to it;
(3) discriminating in regard to hire or tenure to encourage or discourage membership in an employee organization.
A unilateral change by an employer in the terms and conditions of employment is a prima facie violation of the employees' collective-bargaining rights. Educ. Minn.-Greenway , Local 1330 v. Indep. Sch. Dist. No. 316 , 673 N.W.2d 843, 849 (Minn. App. 2004), review denied (Minn. Nov. 29, 2007). But a unilateral change is not an unfair labor practice per se. Id. "The crucial inquiry in such event is whether the employer's unilateral action deprived the union of its right to negotiate a subject of mandatory bargaining" and is inconsistent "with past practices of the parties." Foley Educ. Ass'n v. Indep. Sch. Dist. No. 51 , 353 N.W.2d 917, 921 (Minn. 1984). "[E]ven in the absence of subjective bad faith, an employer's unilateral change of a term and condition of employment circumvents the statutory obligation to bargain collectively ... in much the same manner as a flat refusal to bargain." Id.
When interpreting a statute, we "construe [its] words and phrases according to their plain and ordinary meaning." Allan v. R.D. Offutt Co. , 869 N.W.2d 31, 33 (Minn. 2015). The plain language of PELRA provides that it is an unfair labor practice for an employer to "interfer[e] with the formation, existence, or administration of any employee organization." Minn. Stat. § 179A.13, subd. 2(2). The parties do not appear to dispute the material facts: (1) City restructured the fire department; (2) eliminated the FEO positions; and (3) City's unilateral action resulted in the dissolution of Union.[2] In fact, city officials acknowledged that the resolution resulted in the dissolution of Union. For example, the fire chief testified that after the "five full-time equipment operator positions [were] eliminated" Union "no longer exist[ed]." The city administrator testified similarly, stating that the restructure "eliminate[ed] the existence of the Union." Once Union was eliminated, its members were not able to participate in or administer their employee organization. Therefore, we conclude that City violated Minn. Stat. § 179A.13, subd. 2(2), when, during the midst of an operating bargaining agreement, it unilaterally eliminated all FEO positions, effectively dissolving Union.
City argues, however, that caselaw supports its argument that the reorganization of a department, which "decreases the membership or eliminates a bargaining unit," is an act of inherent managerial policy, and thus, is not an unfair labor practice. See Minn. Stat. § 179A.07, subd. 1 ("A public employer is not required to meet and negotiate on matters of inherent managerial policy.");
*240 Minneapolis Ass'n of Adm'rs & Consultants v. Minneapolis Special Sch. Dist. No. 1 , 311 N.W.2d 474, 476-77 (Minn. 1981) (holding that an employer's reorganization that removed employees from a bargaining unit, "concern[ed] a matter of inherent managerial policy" and, therefore, the employer was not "required to meet and negotiate"); State ex rel. Quiring v. Bd. of Educ. of Indep. Sch. Dist. No. 173 , 623 N.W.2d 634, 637-39 (Minn. App. 2001) (determining that employer did not violate PELRA by eliminating school principal's position because restructuring was a matter of inherent managerial policy), review denied (Minn. May 29, 2001).
But in neither Minneapolis Ass'n of Adm'rs & Consultants nor Quiring did the employer's unilateral actions result in the dissolution of the union. In Quiring , in fact, only one member of the union was "eliminated," and, plausibly, the union's administration and existence was not impacted. 623 N.W.2d at 637-39. In Minneapolis Ass'n of Adm'rs & Consultants , seven employees were removed from the bargaining unit as a result of the employer's reorganization, but, similarly, the administration and existence of the union was not impacted. 311 N.W.2d at 474-77. Here, however, City acknowledged that its fire-department restructuring resulted in the elimination of the entire union. We conclude that it is not an "inherent managerial policy" for an employer to reorganize a department when the reorganization interferes with the existence and administration of a union. Minn. Stat. §§ 179A.07, .13, subd. 2(2).
In sum, we agree with Union that City's unilateral restructuring of the fire department violated section 179A.13, subdivision 2(2)[3] . Accordingly, we remand to the district court to consider Union's request for relief and to fashion an appropriate remedy. See Minn. Stat. § 179A.13, subd. 1.
II. The district court did not err by granting summary judgment on Union's claim that the resolution violated Minn. Stat. § 410.12.
Union asserts that the district court erred by granting summary judgment on its claim in Count II that the resolution violated the city charter and the "state law" for amending the charter. City responds that summary judgment on Count II should be affirmed because the resolution did not violate the city charter or the amendment process provided in Minn. Stat. § 410.12.
As stated by Union, "[a]ctions that violate a City Charter are not valid." See Nielsen v. City of Saint Paul , 252 Minn. 12, 88 N.W.2d 853, 857 (1958). The Minnesota legislature has established the procedures under which a charter may be amended in Minnesota Statutes section 410.12, including certification processes for amendments proposed by a citizens' petition, by the city's charter commission, by the city's council, by ordinance, or by election. See Minn. Stat. § 410.12, subds. 1-7. If the resolution's terms conflicted with the city charter's requirements for the fire department, City would have been required to amend the city charter to allow for the implementation of the resolution.
To decide this issue, we must determine whether the reorganization of the fire department violated the city charter and, thus, whether City was required to amend the city charter to implement the restructuring. A city charter is subject to the recognized rules of statutory construction.
*241 62 C.J.S. Municipal Corporations § 156 (2011).
Thus, the intent of the framers, when ascertained, must be given effect. Moreover, if it is free from ambiguity, no construction or interpretation is required or permissible; the language used must control unless this would defeat the intent of the drafter; and it must be given no meaning other than what its words import.
Id. ; see also Am. Tower, L.P. v. City of Grant , 636 N.W.2d 309, 312 (Minn. 2001) (providing that "[w]here the legislature's intent is clearly discernible from plain and unambiguous language, statutory construction is neither necessary nor permitted and courts apply the statute's plain meaning").
The relevant sections of the city charter provide:
SECTION 66. Whenever the City Council may decide by a two thirds vote of all its members that greater protection can be secured by a paid fire department, it may by resolution duly passed, two-thirds of all members voting in the affirmative, abolish the existing volunteer fire department and create in lieu thereof, a paid fire department, which shall be officered and managed as provided in the next section, provided, however, said section shall not apply to volunteer companies of said city.
SECTION 67. In the event of the creation of a paid department the City Council shall appoint a Fire Chief of said fire department, and provide for such other officers and employees as may be deemed necessary for such department.
Brainerd, Minn., City Charter ch. 5, §§ 66-67 (1991). Union argues that the resolution eliminated the fire department's "paid department," and that "such could not be lawfully completed without amending the Charter pursuant to the requirements of Minn. Stat. § 410.12." Union cites several articles from the Crow Wing Historical Society that contain references to "volunteer" fireman and "employed or paid" firefighters to support their contention that a "paid fire department" is "staffed by full-time 24 hour shift personnel."
The district court concluded that the resolution was authorized by the existing city charter because it maintained a paid department and thus there was no need to amend the city charter. The district court therefore concluded that section 410.12 had not been violated.
We agree with the district court's decision that the resolution did not violate the city charter because City maintains a paid fire department. The city charter requires that, if City votes for the "creation of a paid department," it must be "officered and managed" as provided in section 67, which requires: (1) the appointment of a fire chief and (2) the provision of "such other officers and employees as may be deemed necessary for such department." Brainerd, Minn., City Charter ch. 5 at §§ 66-67 (1991). As concluded by the district court, this section is free of ambiguity that a "paid fire department" consists of a fire chief and "other officers and employees" as City "deem[s] necessary." Id.
The resolution did not eliminate the fire chief's position. In fact, the fire chief remained employed by the fire department after the implementation of the resolution. Next, the resolution provided for hiring a "new Assistant Fire Chief," which is consistent with the charter's provision that a paid department must include "other officers and employees." Id. at 67. City's current fire department also utilizes POCs and pays them when they respond to calls. Although the resolution eliminated the FEOs, there is nothing in the charter that *242 requires that FEOs must be included in a "paid fire department." Id. at 66.
Accordingly, we affirm the district court's decision to grant summary judgment to City on Count II of Union's complaint.
III. The district court did not err by determining that Union failed to establish a prima facie case of retaliation.
Union asserts that the district court erred by dismissing "the parallel claims asserted in Counts III and IV" alleging that City's "elimination of the [fire department] was retaliatory for protected freedom of speech under the First Amendment of the [United States] Constitution (Count III) and its Minnesota state constitutional [c]ounterpart, [A]rticle I, section 3 (Count IV)." Union argues that it established a prima facie case and raised issues of material fact that precluded summary judgment. City responds that the district court properly determined that Union failed to state a prima facie case of retaliation.
Union asserted retaliation claims under both the United States Constitution and the Minnesota Constitution. "[T]he Minnesota constitutional right to free speech is coextensive with the First Amendment." Tatro v. Univ. of Minn. , 816 N.W.2d 509, 516 (Minn. 2012). Therefore, "we look primarily to federal law for guidance." Id. We review constitutional free speech issues de novo. Id.
Because Union offered no direct evidence of retaliation, the free-speech claims were evaluated under the McDonnell Douglas[4] burden-shifting framework. See DePriest v. Milligan , 823 F.3d 1179, 1187 (8th Cir. 2016). Under this framework, to establish a prima facie case of retaliation on summary judgment, a plaintiff is required to offer evidence that (1) he or she engaged in activity protected by the First Amendment; (2) the defendant took an adverse employment action against the employee; and (3) the protected conduct was a substantial or motivating factor in the defendant's decision to take the adverse employment action. Campion, Barrow & Assocs. of Ill., Inc. v. City of Minneapolis , 652 F.Supp.2d 986, 992 (D. Minn. 2009) (citing Davison v. City of Minneapolis , 490 F.3d 648, 654-55 (8th Cir. 2007) ). If the plaintiff can establish a prima facie case, the burden shifts to the defendant to "rebut it by presenting evidence of a legitimate, non-retaliatory reason for the action it took against [the plaintiff]." DePriest , 823 F.3d at 1187 (quotations omitted). "If [the defendant] satisfies this burden, [the plaintiff] is then obliged to present evidence that creates a question of fact as to whether [the defendant's] proffered reason was pretextual." Id. (quotation omitted).
The district court applied this framework and determined that Union failed to make a prima facie case of retaliation, that City proved a legitimate reason for the restructuring, and that Union could not show that City's reason was pretextual. We agree that Union has not proved a prima facie case of retaliation, and affirm the district court's decision granting summary judgment to City on Counts III and IV.
A. Prima Facie Case of Retaliation
i. Constitutionally protected speech
First, Union was required to show that it engaged in an activity protected by the *243 First Amendment. See Campion , 652 F.Supp.2d at 992. Union (which includes Turner) pointed to several statements made by Turner to local media sources and on Facebook as protected speech. The district court concluded that Turner's speech was "at least partially constitutionally protected."
"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos , 547 U.S. 410, 417, 126 S.Ct. 1951, 1957, 164 L.Ed.2d 689 (2006). There are three requirements for protected speech. First, the plaintiff must have spoken as a citizen and not pursuant to official employment duties. Id. at 423, 126 S.Ct. at 1961. Second, the plaintiff's statements must "constitut[e] speech on a matter of public concern." Rankin v. McPherson , 483 U.S. 378, 384, 107 S.Ct. 2891, 2897, 97 L.Ed.2d 315 (1987). Finally, the plaintiff's interest as a citizen in commenting on matters of public concern must outweigh the state's interest, "as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Bd. of Educ. , 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968).
We affirm the district court's determination that Turner's statements constituted protected speech. Turner spoke as a private citizen. In order for speech to be pursuant to an employee's official duties, the speech must be something he "was employed to do." Garcetti , 547 U.S. at 421, 126 S.Ct. at 1960. Turner was not speaking as a city spokesperson or representative, and his statements were motivated by his desire, as a citizen, to save the FEO positions from being eliminated from the fire department.
"Matters of public concern include matters of political, social, and other concern to the community." Belk v. City of Eldon , 228 F.3d 872, 878 (8th Cir. 2000) (citing Connick v. Myers , 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983) ). The "content, form, and context of the speech" are relevant to whether the speech involves a matter of public concern. Belk , 228 F.3d at 878. City argues that Union's speech was not on matters of public concern because it "was an airing of a workplace dispute." We disagree. In an article dated September 17, 2015, Turner called City's restructuring plan a "safety issue" and stated that fire department response times would "double or triple." The safety of citizens from fire emergencies is a matter of social and political concern. Additionally, in another article, Turner commented on mismanagement by the fire chief and city government, stating that the union members had rendered a vote of no confidence in the fire chief. Speech that "criticizes a public employer in his capacity as a public official" addresses a matter of public concern. Id . Therefore, we conclude that the district court did not err in its determination that Union commented on matters of public concern.
Finally, because City has not asserted that Turner's statements disrupted the workplace and because Turner commented on a matter of public concern, we conclude that Union's right to comment outweighed City's interest in promoting the efficiency of the public services it performs. Thus, the district court did not err in determining that Union raised a genuine issue as to whether the speech was constitutionally protected.
ii. Adverse employment action
"[A]n adverse employment action must effectuate a material change in the terms or conditions of ... employment."
*244 Bechtel v. City of Belton , 250 F.3d 1157, 1162 (8th Cir. 2001) (quotation omitted). Restructuring the fire department to eliminate all FEOs constituted a material change of employment. We conclude that Union has established an adverse action.
iii. Causal connection: substantial or motivating factor
Union was required to offer evidence sufficient to prove that the adverse action was causally related to the protected speech. See Campion , 652 F.Supp.2d at 992 (providing plaintiff must show that "the protected conduct was a substantial or motivating factor in the defendant's decision to take the adverse employment action"). The district court concluded that Union failed to raise any fact issue regarding whether there was a causal connection between the public speech and the fire department restructuring.
Close temporal proximity may be sufficient circumstantial evidence supporting an inference of retaliatory motive. Hubbard v. United Press Int'l, Inc. , 330 N.W.2d 428, 445 (Minn. 1983). "But usually more than a temporal connection is necessary to create a genuine fact issue on retaliation." Freeman v. Ace Tel. Ass'n , 404 F.Supp.2d 1127, 1141 (D. Minn. 2005).
Union argues that the district court erred because City employees responded negatively to Turner's comments, thus establishing a causal connection. For example, the fire chief, who supported the restructuring of the fire department, wrote to other supporters that Turner was "throwing mud around on Facebook." Additionally, prior to the vote on the restructuring, the fire chief asked for supporters to show "positive feedback" for the plan at the council meeting because, he alleged, "You know [the council is] hearing from the negative side."
We agree with the district court that Union failed to show a causal connection. First, based on our review of the record, the social media posts and the September 17, 2015, Brainerd Dispatch article, took place after City informed Union, in July 2015, that it was again considering the "possible restructuring of the Fire Department to eliminate full-time [FEOs] for solely paid on-call firefighters as a cost-saving measure." Therefore, Union has failed to show a temporal connection. Second, City had made clear, since 2010, that the restructuring of the fire department would be a cost-saving measure. City provided significant detail regarding its financial struggles, and has "remained consistent" that its decision to restructure the fire department was solely motivated by budget problems. Although there is evidence that the fire chief and city administrator were frustrated by Turner's statements, we agree with the district court that these statements did not create a fact issue, regarding whether there was a causal connection between the protected speech and the fire department restructuring, in light of the overwhelming evidence and statements by city officials that the restructuring was based on budget problems. The district court correctly determined that Union did not offer evidence sufficient to prove a causal connection between the protected speech and the adverse employment action.
iv. Conclusion
Union has failed to make a prima facie claim of retaliation because it failed to offer evidence sufficient to prove a causal connection between the protected speech and restructuring of the fire department. Therefore, the district court did not err by granting summary judgment on Counts III and IV of Union's complaint, and we affirm the dismissal of those counts.
*245 DECISION
City violated PELRA when it eliminated the FEO positions from the fire department. On remand, the district court shall enter judgment in favor of Union on Count I of the complaint and address Union's request for relief. Because the district court appropriately determined that the resolution did not violate Minn. Stat. § 410.12, we affirm its grant of summary judgment on Count II. Finally, because the district court correctly concluded that Union failed to establish a prima facie case of retaliation based on conduct protected by the First Amendment, we affirm the district court's decision to grant summary judgment to City on Counts III and IV.
Affirmed in part, reversed in part, and remanded.

Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

The district court applied the former version of rule 56, which was recently "revamped" to more "closely follow" the federal rules. Minn. R. Civ. App. P. 56 2018 advisory comm. cmt. When promulgating amendments to rule 56, effective on July 1, 2018 and applicable to pending cases, the supreme court specifically indicated that amended language on the standard for granting summary judgment reflects recent Minnesota caselaw. Order Promulgating Amendments to Rules of Civil Procedure , No. ADM04-8001 (Minn. Mar. 13, 2018). Because the legal standard is unchanged, we cite to the current version of rule, even though the district court's decision was issued before the amended rule took effect.

Union is an employee organization under PELRA. See Minn. Stat. § 179A.03, subd. 6 (defining an employee organization as "any union or organization of public employees whose purpose is, in whole or in part, to deal with public employers concerning grievances and terms and conditions of employment").

Because we conclude that City violated Minn. Stat. § 179A.13, subd. 2(2), we do not reach Union's remaining PELRA arguments under section 179A.13, subdivisions 2(1) and (3).

McDonnell Douglas Corp. v. Green , 411 U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).