## United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-2475
_____

Robert Gipson

*Plaintiff - Appellant*

v.

Dassault Falcon Jet Corp

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: September 22, 2020
Filed: December 22, 2020
_____

Before LOKEN, SHEPHERD, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Robert Gipson sued his former employer, Dassault Falcon Jet Corporation ("Dassault"), alleging race discrimination and retaliation. According to Gipson, Dassault engaged in race discrimination and retaliation when it denied him a promotion in 2015 and laid him off as part of a reduction in force in 2017. The

district court[1] granted summary judgment in favor of Dassault on all claims. Gipson appeals. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

Dassault hired Gipson in 2004 to be a quality control inspector. Gipson was promoted to manufacturing engineer in 2006. Everything appeared to be going fine until approximately 2011, when Gipson received a poor performance evaluation from his supervisor. Gipson was unhappy with the evaluation and complained to Human Resources ("HR") about his supervisor. Later, Gipson and his supervisor got into a heated argument which ended with security escorting Gipson to HR. After this incident, Gipson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right to sue letter but Gipson chose not to sue. Dassault assigned Gipson a different supervisor.

In 2012, Gipson was made aware of an offensive email sent around by a colleague; the email compared an African-American male to a monkey. Gipson reported the email to HR. The employee who sent the email was suspended. The suspended employee was not Gipson's supervisor or manager and he was not involved in any of the future decisions that are at issue in this case.

In January 2013, Gipson's team leader resigned and he assumed many of the duties of a team leader. Gipson asserts he shouldered all of the team-leader responsibilities except completing performance evaluations and timesheets. According to Dassault, the evaluations and timesheets were the two "supervisory responsibilities" that a team leader would be responsible for completing. Dassault

---

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

counters that Gipson was given only "project responsibility," not "personnel/ supervisor responsibilities."

In March 2014, Dassault promoted Gipson to senior manufacturing engineer. The promotion came with a small pay raise. Gipson had served as a senior manufacturing engineer for about 10 months when Dassault posted an open team leader position through its "Career Opportunities Program" (which facilitates promoting from within). Gipson applied for the position. About a week after submitting his application, Gipson received a letter from HR stating that he was not qualified for the position because he had not served in his current position as senior manufacturing engineer for at least 12 months. Because HR determined that Gipson was not qualified for the position, his application was never forwarded to those at Dassault tasked with making the promotion decision. Terrance Smith, an African-American employee, was selected for the promotion.

After being passed over for the promotion, Gipson met with Antoine Goncalves and Michel Simian, who were two of the individuals responsible for promoting Smith. They informed Gipson that they never received his application, as HR did not believe he met the minimum qualifications. They added that, even if they had received his application, they would not have selected him because he was not ready to be a team leader. According to Simian, Gipson needed to be friendlier and more approachable, as he was currently "big and intimidating."

In July 2015, Gipson filed an EEOC charge alleging that he did not receive the promotion for team leader because of his race and because he filed a 2011 EEOC complaint. The EEOC issued a right to sue letter and Gipson commenced this action in October 2016.

Dassault terminated Gipson's employment in May 2017 as part of a reduction in force. According to Dassault, Gipson was terminated because other senior manufacturing engineers had more seniority than him. Gipson, in contrast, contends there were two Caucasian senior manufacturing engineers who he alleges had less seniority than him but were offered voluntary demotions in lieu of termination. According to Gipson, one took a demotion (Dave Richarme) and one chose termination over demotion (Steve Green). Gipson contends he was discriminated against because Dassault never offered him a voluntary demotion.

In his amended complaint, Gipson alleges that Dassault's failure to promote him in 2015 constituted race discrimination and retaliation in violation of Title VII (42 U.S.C. § 2000e), 42 U.S.C. § 1981, and the Arkansas Civil Rights Act of 1993 ("ACRA"). He also alleges that his termination constituted race discrimination and retaliation in violation of § 1981 and the ACRA. The district court granted summary judgment to Dassault on all of Gipson's claims. Gipson appeals.

## II.    DISCUSSION

We review *de novo* a grant of summary judgment. Robinson v. Am. Red Cross, 753 F.3d 749, 754 (8th Cir. 2014). The district court's grant of summary judgment is appropriate if, viewing the evidence in the light most favorable to Gipson and giving him the benefit of all reasonable inferences, there is no genuine issue of material fact. Rinchuso v. Brookshire Grocery Co., 944 F.3d 725, 729 (8th Cir. 2019). For there to be a genuine issue of material fact, Gipson must present either direct evidence of discrimination or retaliation, or sufficient indirect evidence to carry his burdens under the familiar McDonnell Douglas framework. Findlator v. Allina Health Clinics, 960 F.3d 512, 514 (8th Cir. 2020) (discrimination claims); DePriest v. Milligan, 823 F.3d 1179, 1187 (8th Cir. 2016) (retaliation claims). We consider Gipson's claims in turn.

### A. 2015 Promotion

We analyze Gipson's state and federal race discrimination claims together, as the statutes are "evaluated identically." Schaffhauser v. United Parcel Serv., Inc., 794 F.3d 899, 902 (8th Cir. 2015). Gipson may use either direct or indirect evidence to support his race discrimination claim. Id. Direct evidence contains a specific link between a discriminatory animus and the complained of employment decision, allowing reasonable fact finder to find the illegitimate criterion was the employer's actual motivation for the decision. Twymon v. Wells Fargo & Co., 462 F.3d 925, 933 (8th Cir. 2006).

Gipson contends Simian's statement that Gipson was "big and intimidating" is direct evidence of race discrimination. Gipson perhaps reads too much into Simian's statement, as the statement on its face is race neutral and Simian (for whom English is a second language) immediately apologized when Gipson told him the statement was racially charged. Regardless, Gipson's claim fails because HR never sent his application to Simian for consideration and Simian was not involved in any employment decision related to Gipson. Twymon, 462 F.3d at 933 (stray workplace remarks, statements by non-decisionmakers, or statements by decisionmakers that are not related to the decisional process itself do not constitute direct evidence). Simian's statement is not direct evidence of racial animus.

We consider next whether Gipson has carried his burden of establishing a prima facie case under the familiar McDonnell Douglas framework. Part of the prima facie case in a failure-to-promote context requires a showing that the applicant was qualified for the position he sought and the employer filled the position with a person not in the same protected class. Nelson v. USAble Mut. Ins. Co., 918 F.3d 990, 993 (8th Cir. 2019) (quoting Torgerson v. City of Rochester, 643 F.3d 1031, 1046 (8th

Cir. 2011) (en banc)).[2] Gipson asserts that Simian's statement when combined with "shifting explanations" as to why he was not promoted constitute sufficient indirect evidence of discrimination to state a prima facie case.

Simian's statement does not give rise to an inference of discrimination. Moreover, Gipson's claim of "shifting explanations" is inaccurate. HR deemed Gipson not qualified for the promotion based on an objective, race-neutral policy.[3] Simian and Goncalves told Gipson that they never received his application from HR and that, even if they had received his application, they would not have promoted him because he was not ready to be a team leader. There is nothing shifting or inconsistent about these statements. Viewing the evidence in the light most favorable to Gipson, Gipson has presented no evidence that could give rise to an inference of race discrimination to meet his burden under the McDonnell Douglas framework.

---

[2]The employee promoted over Gipson was an African-American male and thus a member of the same protected group as Gipson. We have previously noted there might be some cases in which a plaintiff can establish a prima facie case even though the selected employee was a member of the same protected class because that fact goes to the weight of the evidence as opposed to its legal sufficiency. McGinnis v. Union Pac. R.R., 496 F.3d 868, 874 n.2 (8th Cir. 2007). Because Gipson has failed to show he was qualified for the promotion and has presented no facts that give rise to an inference of race discrimination, his prima facie case fails.

[3]While Gipson conclusorily claims the 12-month policy was applied in discriminatory ways, he has not pointed us to evidence supporting his claim. The evidence in the record establishes that Dassault has different promotion programs and the 12-month policy applies to positions Dassault posts and opens up for applications. Not all openings are posted. Gipson has not presented evidence demonstrating that any of the employees he believes were treated more favorably were promoted under a program in which the 12-month policy applied.

Gipson also alleges that he did not receive the 2015 promotion because Dassault retaliated against him for filing an EEOC complaint in 2011. We analyze Gipson's state and federal retaliation claims together. Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 684 (8th Cir. 2012) (applying the same legal standards to retaliation claims brought under § 1981 and the ACRA). Like his discrimination claim, Gipson can survive summary judgment by presenting either direct or indirect evidence. DePriest, 823 F.3d at 1187. Gipson contends he has direct evidence of retaliation and points to a statement by a team leader at Dassault who told him that he was not promoted because he filed an EEOC charge. But that team leader had no role in the decision-making process and as such the statement is not direct evidence. Twymon, 462 F.3d at 933.

To establish a prima facie case of retaliation, Gibson must show: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between his protected activity and the adverse employment action. Robinson v. Potter, 453 F.3d 990, 994 (8th Cir. 2006). Gipson has not established a causal connection between his 2011 EEOC complaint and Dassault's 2015 promotion decision. When the 2015 promotion decision was made, four years had passed since Gipson had filed his EEOC complaint and, in those four years, Dassault had promoted Gipson, increased his pay, and stated (repeatedly) in performance evaluations that he was meeting or exceeding expectations. There is no evidence in the record demonstrating a causal connection between the 2011 EEOC complaint and Dassault's decision four years later to promote another employee instead of him.

## B. 2017 Reduction in Force

Gipson claims he was terminated in 2017 because of his race. The district court found that Gipson failed to make the necessary showing that race was a factor in his termination, explaining the evidence established: (1) Gipson had low seniority

in relation to other senior manufacturing engineers; (2) three other senior manufacturing engineers not on the reduction-in-force list all had more seniority than Gipson; and (3) Green, a Caucasian senior manufacturing engineer, was also laid off due to a lack of seniority.

On appeal, Gipson asserts a less senior Caucasian employee who had not filed an EEOC charge was allowed to take a demotion, an option not presented to Gipson. Dassault presented legitimate, nondiscriminatory reasons for its actions – a planned, company-wide reduction in force as well as objective parameters for the reduction in force. Under the McDonnell Douglas framework, the burden shifts back to Gipson to show that Dassault's proffered explanations are merely a pretext. Gipson has not offered any evidence to demonstrate Dassault's proffered explanations were pretextual. Gipson offered nothing more than his own self-serving statements that other less senior Caucasian employees were offered a demotion in lieu of termination, but he was not. This court has explained that a statement is self-serving when it adds a crucial element to a cause of action not alleged in the complaint. Frevert v. Ford Motor Co., 614 F.3d 466, 474 (8th Cir. 2010). Because Gipson has not substantiated his allegations with sufficient probative evidence that would permit a finding in his favor, Dassault is entitled to summary judgment on Gipson's claim of racial discrimination related to his termination.

Finally, Gipson alleges that he was laid off in 2017 in retaliation for filing EEOC complaints in 2011 and 2015. Because Gipson does not have any direct evidence tying his EEOC complaints to his termination, he must state a prima facie case of retaliation by demonstrating that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. Wells v. SCI Mgmt., L.P., 469 F.3d 697, 702 (8th Cir. 2006). Gipson cannot satisfy the third prong.

Gipson's EEOC complaints and his termination are too attenuated to show a causal connection. Years passed between Gipson's complaints and his termination. Between the first EEOC complaint in 2011 and his termination in 2017, the evidence in the record demonstrates Gipson was treated favorably by Dassault – he was promoted, he was given a pay raise, and he received multiple positive performance evaluations. Similarly, Gipson does not point to any poor treatment between the second EEOC complaint in 2015 and his termination 2017 that could show a causal connection. Because Gipson cannot establish a prima facie case, his retaliation claim necessarily fails.

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Dassault.

_____